ROSEMONT ENTERPRISES, INC., Appellant, v CLIFFORD IRVING, Respondent, et al., Defendants.

First Department, December 2, 1975

*David I. Shivitz* of counsel *(Howard M. Jaffe* and *Mark A. Pachman* with him on the brief; *Halperin Shivitz Scholer Schneider & Eisenberg* and *Davis & Cox,* attorneys), for appellant.

*Harold P. Weinberger* of counsel *(Maurice N. Nessen* with him on the brief; *Nickerson, Kramer, Lowenstein, Nessen, Kamin & Soll,* attorneys), for respondent.

STEVENS, P. J. Plaintiff-appellant, Rosemont Enterprises, Inc. (Rosemont), a Nevada corporation, commenced this action January 13, 1972, by service of a summons and complaint. At the same time, by order to show cause, Rosemont sought a temporary injunction against publication by defendant-respondent, Clifford Irving (Irving), of a manuscript purporting to be an authentic autobiography of Howard Hughes. Rosemont alleged that by contract, it had the exclusive right to publish any autobiographical, biographical or other personal material about Hughes. On January 20, 1972, all parties stipulated before Justice CULKIN that publication of the manuscript would be withheld pending an investigation as to the authenticity of the manuscript and the motion for injunctive relief was held in abeyance. On February 12, 1972, after defendant

Time Incorporated (Time) informed plaintiff that it intended to publish a story that Irving's manuscript was a hoax, an order was entered enjoining Time from publishing any or all portions of the manuscript. This was followed by an order entered February 16, 1972, impounding the manuscript and other documents. Thereafter, Irving publicly admitted that the manuscript in question was not an authentic biography of Howard Hughes and, by further order dated May 30, 1972, Justice CULKIN granted Rosemont's motion for a temporary injunction against all parties. The order enjoined defendants "from publishing or disclosing in any manner whatsoever, in whole or part, *the manuscript of a purported autobiography of Howard R. Hughes,* prepared, assembled or written, in whole or part, by Clifford Irving, or any purported autobiographical materials of Hughes, prepared, assembled or written, in whole or part, by Clifford Irving, and from representing, either publicly or privately, that any of the defendants is entitled to publish any of the aforesaid matter; *as an authorized biography or autobiography or biographical or autobiographical material* of Howard R. Hughes." (Emphasis added.) Justice CULKIN also directed that defendants appear and have their depositions taken by oral examination.

By order entered September 15, 1972, Justice CULKIN denied the motions of Time and Irving seeking to dismiss the complaint, but granted defendants' motions seeking a vacatur of the interim orders of February 12, 1972 and February 16, 1972, to the extent of vacating the order of February 16, 1972, and ordering that the order of February 12, 1972, be superseded by the order entered May 30, 1972. The matter then lay dormant until 1975.

Early in 1975, Rosemont was informed by counsel for Irving of plans to publish the manuscript in Spain as a work of fiction. Rosemont's attorneys were invited, but declined to participate in the proposed publication in order to assure themselves of the fictional character of the forthcoming publication. On June 9, 1975, counsel for Irving informed Rosemont's counsel that a Spanish version of "the phony autobiography" had already been published. Thereafter, by order to show cause returnable June 23, 1975, Rosemont moved to modify the injunction contained in the order of May 30, 1972. Contained in the order to show cause was an ex parte order barring publication or disclosure of the manuscript "in any manner whatsoever" pending the hearing of the motion.

Justice TYLER, at Special Term, in a well-reasoned decision and order denied Rosemont's application, stating, *inter alia:* "There has been absolutely no showing by plaintiff that the proposed fictionalized autobiography of Howard R. Hughes will in any way contravene the May 30, 1972 order of Mr. Justice CULKIN, nor has plaintiff shown that the intent of the May 30th order was to enjoin publications such as the one now proposed by the defendants." The court further held that plaintiff had failed to establish a "clear right" to the relief sought.

On appeal, Rosemont asserts that it was error not to grant injunctive relief, that it has a clear right to enjoin publication even though authenticity is disclaimed, and that the court erroneously treated the application as one for a new preliminary injunction and mistakenly disregarded the prior proceedings and determinations before Justice CULKIN.

In the Supreme Court Rosemont sought to have the matter referred to Justice Culkin pursuant to CPLR 2221. However, Justice CULKIN was not available. Rosemont contends that the language of the May 30, 1972 order is somewhat ambiguous and that it has a clear right to move to modify the injunction and order pursuant to CPLR 2221 and 6314.

Insofar as it is pertinent here, CPLR 2221 merely provides that a motion to modify an order "shall be made, on notice, to the judge who signed the order, unless he is for any reason unable to hear it". The language reflects the general policy that Judges shall not pass upon or review a matter already passed upon by another Judge of equal authority or co-ordinate jurisdiction. There are, of course, specific exceptions to the general rule. CPLR 6314 speaks of the right of a *defendant* to move at any time, on notice to the plaintiff, to vacate or modify a preliminary injunction. While the language is restrictive as to the party authorized to move to vacate or modify, it has, upon occasion, been construed so as to permit one whose interests or rights are seriously affected to seek such relief. (See *Witbeck v Niagara, Lockport & Ontario Power Co.,* 214 App Div 371.)

A motion to vacate or modify a preliminary injunction is addressed to the sound discretion of the court which also has the power to impose conditions. One claiming error in its exercise has to show an abuse of such discretionary power. (7A Weinstein-Korn-Miller, NY Civ Prac, par 6301.13.)

The argument that Special Term disregarded the determination of this court when we affirmed the February 12, 1972 order (39 AD2d 524) is without merit. Time, along with the other defendants, had stipulated not to publish the Irving manuscript pending an investigation of its authenticity and, in breach of its agreement, was about to do so, thus necessitating the February 12th order. In affirming that order, we merely preserved the *status quo* and held the stipulation binding. That order was expressly superseded by the order of May 30, 1972, and the rights now to be determined must be measured by the language of that later order. The May 30th order, so strongly relied upon by Rosemont, enjoined the publication by defendants of "the manuscript of a purported autobiography of Howard R. Hughes" and restrained defendants from representing that they were entitled to publish the manuscript as an authorized biography or autobiography of Howard Hughes. The publication complained of is labeled as fiction.

It is difficult to accept Rosemont's contention that it will be hurt economically inasmuch as, since its contract with Hughes in 1965, it does not seem to have made any effort to engage in any publishing venture regarding Hughes. Irving's contention that Hughes' contract with Rosemont represents a protective device or a preventive mechanism seems more soundly based. Moreover, as Justice TYLER noted, Howard Hughes is very much a public figure. As such he obviously is not and cannot be immune from public discussion or public writings. If the laws of libel are transgressed, there may be a ready remedy. (See *New York Times Co. v Sullivan,* 376 US 254.) The right of privacy under the law was never contemplated to exclude or limit, within reasonable bounds, the right to speak and write concerning a public figure. Prior restraint of publication or censorship in advance of publication is generally forbidden and may be unconstitutional unless the existence of certain conditions necessitates such action for the public safety, public welfare, or the preservation of the social order. Those elements are not presented here.

A party seeking to impose such prior restraint carries a heavy burden *(New York Times Co. v United States,* 403 US 713, 714). Rosemont has failed to bear that burden and to show a "clear right" to the relief requested. It has also failed to demonstrate that such a likelihood of success exists, or that the equities so preponderate in its favor as to warrant a

finding that Special Term erred or abused its discretion in denying the motion.

The order entered July 31, 1975, in the Supreme Court, New York County (TYLER, J.), should be affirmed with costs.

MARKEWICH, KUPFERMAN, MURPHY and LUPIANO, JJ., concur.

Order, Supreme Court, New York County, entered on July 31, 1975, unanimously affirmed. Respondent shall recover of appellant $40 costs and disbursements of this appeal.