OPINION OF THE COURT
Edward J. Greenfield, J.
Petitioners, police officers who were appointed in 1968 and 1969, sue on behalf of themselves and all other police officers appointed in those years to enjoin the police department and its officials from "publishing diseminating [sic] broad allegations of misconduct, malfeasance and incompetence” about the class of persons they represent.
The event which triggered this application was the publication of an article in the New York Daily News on March 5, 1978, which was headlined "Class of ’68 and ’69 — Find These Cops Far From Finest”, which article was annexed to the moving papers. The gist of the article is that during the years 1968 and 1969 the police department relaxed its screening procedures for new patrolmen and that as a result, years later, the group which was recruited at that time turned up an inordinate number of disciplinary cases. The article also states that the average I.Q. scores for the recruits of 1968 and 1969 was among the lowest in the history of the department. Although petitioners O’Leary and Toscano refer to their excellent performance records, such facts are irrelevant since it is claimed that the article is directed to an entire class. The *805 records of individuals within that class, of course, vary widely. Petitioners contend that they have been unjustly branded and that their effectiveness has been impaired by this stigmatization of the group of which they are members.
There is no basis upon which the self-styled petitioners can be accorded relief. This motion was not accompanied by any summons or complaint — all that is before the court is an application in vacuuo for permanent injunctive relief. Although they denominate themselves as "petitioners”, this is not a CPLR article 78 proceeding against a body or official based on an alleged failure to perform a duty, a claim that someone is proceeding in excess of his jurisdiction, a challenge to a final determination claimed to be arbitrary or capricious or a claim that a determination after a hearing is not supported by substantial evidence. (CPLR 7803.)
Further, the prior restraint of possible future statements cannot be justified, and there is no possibility of success on the merits.
The prior restraint on statements which police officials might make in the future as to the competence of the police classes of 1968 and 1969 represents an intolerable infringement on First Amendment rights. (Nebraska Press Assn. v Stuart, 427 US 539, 559.) "Prior restraint of publication or censorship in advance of publication is generally forbidden and may be unconstitutional unless the existence of certain conditions necessitate such action for the public safety, public welfare, or the preservation of the social order.” (Rosemont Enterprises v Irving, 49 AD2d 445, 449.) The alleged humiliation or embarrassment of the petitioners hardly rise to the level of protecting public safety, welfare and the social order. The relief requested is so vague as to impose not only a chilling effect, but a freezing effect on the exercise of free speech. The court is asked to restrain future "broad allegations of misconduct, malfeasance and incompetence”. In the light of such vague language, how could anyone guide his future conduct? The request to restrain future criticism of the alleged class raises serious policy questions. The decision of the United States Supreme Court in New York Times Co. v Sullivan (376 US 254) and the decisions of other courts, have made it plain that newspapers are to be given the broadest possible scope in commenting upon matters of governmental, administrative and public interest. The question of whether police recruiting standards should be relaxed is not only a *806 matter of great interest, but seriously concerns the safety of every citizen of the city. Discussion about standards and the analysis of the effects of the relaxation of such standards is totally appropriate for public discussion despite the pain and embarrassment it might cause to some of the persons comprehended within a group. The newspaper article points out a number of specific examples of misconduct and ineptitude amongst graduates of the classes of 1968 and 1969, and further points out that over 20% of the group has been involved in disciplinary proceedings. While that raises a serious question as to the standards involved in choosing them in the first place, it does not stigmatize everyone in the group. Eighty per cent of the group have never been confronted with a disciplinary charge. If average I.Q.’s were low, it is likewise clear that half the group scored much higher than the average.
Class action in this case is palpably improper because of the tremendous disparity in individual cases. Some members of the classes of 1968 and 1969 have performed in exemplary fashion and in accordance with the highest tradition of New York’s finest. Others have disgraced themselves with charges of homicide, sales of narcotics and other misconduct. The group was not homogeneous and even the published statements do not apply equally to all members of the alleged classes. For good reason therefore, the State of New York does not recognize an action for defamation of an entire class except when it is plain that the disparagement is of a group so small that it must have been intended to apply to each and every member of that class (Gross v Cantor, 270 NY 93; Weston v Commercial Advertiser Assn., 184 NY 479; Schutzman & Schutzman v News Syndicate Co., 60 Misc 2d 827). The latter case resembles this in some respects, since in that case the plaintiffs, who were lawyers, sought to restrain the New York Daily News from publishing an advertisement which allegedly disparaged lawyers as a class. The court held that the remedy of injunction was inappropriate and that at best the claim of defamation should be relegated to a libel suit for damages. The court found in that case that the alleged disparagement did not specifically indicate personal harm to the plaintiffs. Just as in the case of University of Notre Dame v Twentieth Century-Fox Film Corp. (22 AD2d 452) we must hold that expressions of criticism, warranted or unwarranted, are an exercise of freedom which cannot be inhibited by a *807 court of equity. The application must be denied in all respects, and this "proceeding”, whatever it is, must be dismissed.