■ In the Matter of the Liquidation of MIDLAND INSURANCE COMPANY. EVEREST REINSURANCE COMPANY, Appellant-Respondent, v JAMES J. WRYNN, as Superintendent of Insurance of the State of New York, et al., Respondents-Appellants, and BAXTER INTERNATIONAL INC., Intervenor-Respondent. [929 NYS2d 116]—

By order entered on or about April 3, 1986, Supreme Court (Thomas J. Hughes, J.) placed Midland Insurance Company in liquidation and permanently enjoined the commencement and prosecution of all actions against it (*see* Insurance Law § 7419 [b]). Everest Reinsurance Company entered into excess of loss reinsurance treaties and facultative reinsurance certificates with Midland for policy periods in the 1970s and 1980s (collectively, the reinsurance contracts).[1] Claiming that its contractual rights were not being honored, Everest moved the court for an

1. "A reinsurance contract is one by which a reinsurer agrees to indemnify a primary insurer for losses it pays to its policyholders" (*Matter of Midland Ins. Co.*, 79 NY2d 253, 258 [1992]). In exchange for the agreement to indemnify, the primary insurer "cedes" part of the premiums for its policies and the losses on those policies to the reinsurer (*id.*). A facultative insurance agreement is one issued to cover a particular risk while treaty reinsurance is obtained in advance of actual coverage and may apply to any risk the primary insurer covers (*id.*).

order modifying the injunction so as to permit an action by Everest for a judgment declaring its rights as well as those of the liquidator under the reinsurance contracts. Everest sought leave to sue for a judgment declaring that the liquidator breached the reinsurance contracts by failing to provide Everest with (a) proper information regarding claims, (b) an opportunity to participate in settlement negotiations with Midland policyholders and (c) an opportunity to participate in the claim allowance process. The relief Everest would have wanted to seek in its action was a declaration that it was not required to provide reinsurance for claims affected by the foregoing alleged breaches and a further declaration that Everest has the right to interpose defenses in the liquidator's settlement negotiations and claims allowance processes. On this appeal, Everest argues that the court committed error in denying its motion to modify the injunction.

Insurance Law § 7419 (b) vests a liquidation court with broad authority to issue injunctions as it deems necessary to prevent interference with the liquidator or the proceeding, or the waste of the insurer's assets. Accordingly, a court has the unquestioned authority to vacate an antisuit injunction in the interest of justice (*see Matter of Bean v Stoddard*, 207 App Div 276, 280 [1923], *affd* 238 NY 618 [1924]). A motion for such relief is addressed to the sound discretion of the court (*see Rosemont Enters. v Irving*, 49 AD2d 445, 448 [1975]). One claiming error in the exercise of a court's discretion has the burden of showing an abuse of such discretionary power (*id.*). Everest correctly cites *Matter of Bean v Stoddard* (207 App Div 276 [1923], *affd* 238 NY 618 [1924]) for the proposition that in a liquidation proceeding a court may vacate an injunction in the interest of justice. "The phrase 'interest of justice' implies conditions 'which assist, or are in aid of or in the furtherance of, justice [and] bring about the type of justice which results when the law is correctly applied and administered' after consideration of the interests of both the litigants and society" (*Hafkin v North Shore Univ. Hosp.*, 279 AD2d 86, 90 [2000], *affd sub nom. Leader v Maroney, Ponzini & Spencer*, 97 NY2d 95 [2001] [citations omitted]).

In making its determination, the court found that Everest did not establish a likelihood of its success in proving that the liquidator violated its contractual investigation and interposition rights by refusing to allow Everest to participate in the allowance, disallowance and settlement of claims prior to their submission to the court. The court further noted that Everest will suffer no injury until it is called upon to make payment on

claims that the liquidator allows and the court has approved. The court also recognized the public interest in the single management of a liquidation that Insurance Law § 7419 (b) is intended to protect. Hence, we conclude that the court gave due consideration to the interest of justice in denying Everest's motion for an order vacating the antisuit injunction. Although the court misstated Everest's burden on the motion to be proof by a preponderance of the evidence, we also find no abuse of discretion on the basis of the foregoing factors considered by the court.[2]

We reject Everest's argument that the court erroneously held that Everest's right to interpose defenses attaches only after the liquidator has allowed a claim. Under Insurance Law § 1308 (a) (3), a reinsurance agreement may provide that where a claim is pending during an insurer's insolvency proceeding the reinsurer "may investigate such claim and interpose, at its own expense, in the proceeding where such claim is to be adjudicated any defenses which it deems available to the ceding company, its liquidator, receiver or statutory successor." Moreover, Insurance Law §§ 7432 and 7433 provide for the processing of claims by the liquidator while section 7434 (a) (1) contemplates the payment of claims upon the recommendation of the liquidator under the direction of the court. Hence, claims are adjudicated after they have been filed with the court.

Everest's claim of a right to interpose defenses at the commencement of a liquidation proceeding is also at odds with the very nature of reinsurance. Even where there is reinsurance, primary insurers are solely responsible for the investigation and defense of claims (*see Unigard Sec. Ins. Co. v North Riv. Ins. Co.*, 79 NY2d 576, 583 [1992]). "The reinsurer does not assume liability for losses paid . . . ; its only obligation is to indemnify the primary insurer" (*Matter of Midland Ins. Co.*, 79 NY2d at 258). The reinsurance contracts involved here contain typical "follow the settlements" or "follow the fortunes" provisions which leave reinsurers little room to dispute the primary insurers' claims handling (*Unigard* at 583). By operation of a "follow the settlements" clause, a reinsurer is bound by the settlement or compromise of a claim agreed to by a cedent unless it can show impropriety in arriving at the settlement (*Excess Ins. Co. Ltd. v Factory Mut. Ins. Co.*, 3 NY3d 577, 582 n 3 [2004]). The reinsured's liability determinations are insulated from the reinsurer's challenge " 'unless they are fraudulent, in bad faith,

2. Here the court relied on *Icy Splash Food & Beverage, Inc. v Henckel* (14 AD3d 595 [2005]), a case that is distinguishable because it involves the standard of proof on a trial as opposed to a motion.

or the payments are clearly beyond the scope of the original policy or in excess of [the reinsurer's] agreed-to exposure' " (*Allstate Ins. Co. v American Home Assur. Co.*, 43 AD3d 113, 121 [2007], *lv denied* 10 NY3d 711 [2008] [internal quotation marks and citation omitted], *quoting North Riv. Ins. Co. v Ace Am. Reins. Co.*, 361 F3d 134, 140 [2d Cir 2004]). We are, therefore, not persuaded by Everest's argument that a reinsurer's right to investigate claims and interpose defenses attaches with the commencement of a liquidation proceeding and even before the liquidator has decided to allow a claim.

We also reject Everest's claim that the court lacked the authority to order a reference for hearings before a referee on defenses to be interposed by the reinsurers. Since 1994, objections to the liquidator's recommendations for the denial of policyholders' claims in this proceeding have been referred to a referee to hear and report (*see Matter of Midland Ins. Co.*, 71 AD3d 221, 223 [2010], *revd on other grounds* 16 NY3d 536 [2011]). The court's January 15, 2008 order provides for "a process in which [the reinsurers'] defenses can be adjudicated as part of the judicial approval process, involving a hearing before a referee equivalent to that provided where an objection is filed to the liquidator's disallowance of a claim." Accordingly, the court set up a mechanism for a referee to hear and report to the court on the reinsurers' defenses. CPLR 4001 enables a court to "appoint a referee to determine an issue, perform an act, or inquire and report in any case where this power was heretofore exercised and as may be hereafter authorized by law." The statute carries over the appointment powers exercised by courts "traditionally" or under prior law (Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C4001:1). CPLR 4001 became effective in 1962 (L 1962, ch 308). Courts exercised the power to appoint referees to hear and report in liquidation proceedings prior to that time (*see e.g. Matter of National Sur. Co.*, 286 NY 216 [1941]) and since (*see e.g. Matter of Union Indem. Ins. Co. of N.Y.*, 67 AD3d 469 [2009], *lv dismissed* 14 NY3d 859 [2010]; *Matter of Midland Ins. Co.*, 269 AD2d 50 [2000]). We, therefore, find the court's appointment of a referee to hear and report with respect to the reinsurers' defenses to be within the proper exercise of the court's powers pursuant to CPLR 4001. Also, contrary to the arguments of Everest and the other reinsurers, their rights to issue subpoenas and conduct discovery have not been foreclosed. Such matters are within the discretion of a referee to hear and report (*see* CPLR 4201).

The court properly denied Everest's motion for an order

precluding the liquidator and Midland's policyholders from introducing evidence of settlements entered into by Everest as a direct insurer in other proceedings. The proffered evidence is relevant inasmuch as it is offered to refute Everest's claims by showing that Everest, as a direct insurer in other proceedings, utilized the claims handling methodology it seeks to challenge as a reinsurer in this proceeding. Everest's reliance on CPLR 4547 is misplaced because the disputed evidence is not offered "as proof of liability for or invalidity of the claim" (id.). Moreover, the statute does not limit the admissibility of evidence offered for another purpose (id.).

The guaranty associations that have appeared in this proceeding assert that the court's order is erroneous to the extent that it allows a reinsurer to interpose defenses as to claims settled by the liquidator or claims the liquidator is bound by law to approve. The guaranty associations essentially argue that article 74 of the Insurance Law, which governs liquidation, trumps Insurance Law § 1308, which applies to reinsurance. We reject the guaranty associations' argument on the ground that liquidation cannot place a liquidator in a position different from that in which the insolvent insurer would have found itself but for the liquidation (see Matter of Midland Ins. Co., 79 NY2d at 264-265).[3]

We reject the liquidator's argument that the claims procedures set forth in the June 2, 2009 order are inefficient insofar as they allow the reinsurers to interpose defenses at the claims allowance stage. On the contrary, the court's procedure provides a useful mechanism for the disposition of the reinsurers' defenses during liquidation or in a subsequent action brought by the liquidator. We have considered the parties' remaining contentions and find them unavailing. Concur—Sweeny, J.P., Moskowitz, DeGrasse, Freedman and Richter, JJ. **[Prior Case History: 18 Misc 3d 1117(A), 2008 NY Slip Op 50110(U).]**

---

3. The appendices before this Court are insufficient to enable us to pass on the guaranty associations' assertion that the liquidator is bound by the settlements of the associations' claims. We note that the issue was not addressed by the court below and the liquidator states in its brief that it was first raised by the guaranty associations on a motion for leave to reargue.