OPINION OF THE COURT
 

 Simons, J.
 

 This is a declaratory judgment action instituted by plaintiff insurer seeking a determination that it had no duty to indem
 
 *313
 
 nify its insured for punitive damages awarded against the insured in two separate out-of-State slander actions. The question is whether New York’s public policy precluding indemnification for punitive damages should prevail over the public policies of the judgment States, which allow indemnification.
 

 The action originally encompassed five separate underlying personal injury suits. Three have been resolved. In the first of the two remaining actions, Alexander Simon, the business manager for the actor Burt Reynolds, decided to close the Reynolds account with Shearson because of heavy losses. The Shearson broker then forged Simon’s name to a letter authorizing payment of the funds from that account to Simon’s family and friends. After two senior Shearson executives informed Reynolds of the letter, Reynolds terminated his relationship with Simon. Simon then brought suit in Federal District Court in Georgia for negligence, fraud and slander. He prevailed on the fraud and slander claims, recovering both general and punitive damages, but the District Court set aside the award. On review, the Eleventh Circuit Court of Appeals reinstated the damages awarded on the slander claim when Simon agreed to accept a reduced amount
 
 (see, Simon v Shearson Lehman Bros.,
 
 895 F2d 1304).
 

 In the second action, Stuart Tucker was dismissed as a Shearson broker for selling limited partnerships without prior approval. In an attempt to retain Tucker’s clients for the brokerage, a Shearson senior vice-president informed them that the Securities and Exchange Commission was going to take away Tucker’s broker’s license, and that he would never be able to work again as a broker. Tucker successfully sued for slander in Texas District Court, winning both compensatory and punitive damages. The Texas Court of Appeals affirmed.
 

 Under the standard general comprehensive liability policy issued to Shearson, Zurich Insurance agreed to pay "all sums” Shearson might become legally obligated to pay as damages in a personal injury action. The policy specifically included an action for slander and contained no choice of law provision. When damages were awarded against Shearson in the out-of-State slander actions, Shearson sought indemnification from its carrier for both the compensatory and punitive damages awarded. In turn, Zurich brought this declaratory judgment action seeking a declaration that it had no duty to provide
 
 *314
 
 coverage for the punitive damage awards, because New York law precludes indemnification for punitive damages.
 
 [1]
 

 On Zurich’s motion for summary judgment, Supreme Court ruled that under this Court’s holding in
 
 Home Ins. Co. v American Home Prods. Corp.
 
 (75 NY2d 196), New York’s policy against indemnification for punitive damages would apply even though the punitive damages were incurred in a foreign State. However, the court concluded that New York’s policy would preclude indemnification only for the Georgia award, although the conduct in both underlying personal injury actions would support an award of punitive damages in New York. Because Texas law recognized a compensatory component to a punitive damages award, the court reasoned, the award was not solely for punitive purposes and thus did not offend New York’s policy. On cross appeals by both parties, the Appellate Division held that indemnification for the Texas award should be precluded as well, because the jury there had been charged only on the exemplary purposes of punitive damages, and there was no indication that the award included any compensatory elements. Notably, in both cases the Appellate Division relied on
 
 Home Ins.
 
 for the proposition that New York policy concerning indemnification for punitive damages applied to punitive damages awarded in a foreign State against a New York insured. There is an important contextual distinction between this case and
 
 Home Ins.,
 
 however: in
 
 Home Ins.,
 
 the public policy of the judgment State, like that of New York, precluded indemnification for punitive damages, while here the judgment States permit it. Thus, this case presents a choice of law issue not present in, or decided by,
 
 Home Ins.
 

 We conclude that New York choice of law principles require application of New York’s public policy. However, that public policy would not, under the circumstances of this case, preclude indemnification for the punitive damages awarded in the underlying action in the State of Georgia, only for those awarded in the action in the State of Texas.
 

 Shearson attempts first to remove this case from the
 
 Home
 
 
 *315
 

 Ins.
 
 universe entirely by arguing that the tortious conduct in the underlying personal injury actions would not support an award of punitive damages in New York. Under
 
 Home Ins.
 
 this is a necessary threshold determination for if the damages awarded would not be "punitive” under New York law, indemnification would not be precluded by New York public policy. In that case there would be no conflict between New York and the judgment States concerning indemnification and the choice of law problem central to this appeal would not arise.
 

 Addressing the Georgia judgment, Shearson points out that in that action it was necessary to resort to extrinsic evidence to establish that the statements at issue constituted slander per se. Under New York law, if slander per se is established by extrinsic evidence, the plaintiff must plead and prove special damages as an element of the claim, or recovery is barred
 
 (see, Aronson v Wiersma,
 
 65 NY2d 592). Because Simon, the Georgia plaintiff, did not plead and prove special damages (California law did not require it),
 
 [2]
 
 Shearson argues that his recovery would be barred in New York and thus the conduct at issue would not support an award of punitive damages in this State. Shearson has failed, however, to distinguish between the conduct and the method of its proof.
 

 In
 
 Home Ins.,
 
 we stated that a New York court "must examine the nature of the claim, including the degree of wrongfulness for which the damages were awarded” (75 NY2d, at 201). We meant by this that the court must ascertain whether the conduct at issue exhibits the degree of culpability necessary to sustain a punitive award in New York, not whether the form of evidence or the method of proof acceptable to the judgment State would be sufficient in New York.
 
 Home Ins.
 
 in fact precludes the New York court from undertaking collateral review of the factual determinations or the legitimacy of the proceedings of the judgment State as part of its determination whether to apply New York’s policy on punitive damages. The Georgia court found the statement at issue was made with "actual malice”, which satisfies New York’s legal standard for slander, and thus the conduct in the Georgia action would support a New York punitive damage award.
 

 The rule in
 
 Home Ins.
 
 similarly disposes of Shearson’s
 
 *316
 
 argument that Tucker, the plaintiff in the Texas action, would not have prevailed in New York because the Shearson executive who uttered the slanderous statements was not sufficiently highly placed to establish the necessary level of corporate complicity. The Texas Court of Appeals affirmed that the standard for corporate liability under Texas law was satisfied, and under
 
 Home Ins.
 
 New York will not undertake collateral review of a sister State’s application of its own law. Because the Texas jury found the statements had been made with "actual malice”, the standard of culpability to support a New York punitive award is met here as well.
 

 Shearson next argues that because the concept of punitive damages under Georgia and Texas law differs so fundamentally from that of New York, New York’s public policy would not be offended by indemnification. Thus, it contends that indemnification for the Georgia award should be permitted because it is impossible to determine whether the jury awarding punitive damages contemplated an exemplary or a compensatory purpose, or indeed both, and that Shearson should accordingly be afforded the benefits of "the presumption of coverage”.
 

 We have consistently adhered to the view that the purpose of punitive damages is solely to punish the offender and to deter similar conduct on the part of others
 
 (see, Soto v State Farm Ins. Co.,
 
 83 NY2d 718;
 
 Hartford Acc. & Indem. Co. v Village of Hempstead,
 
 48 NY2d 218). Punitive damages are not intended to compensate or reimburse the plaintiff
 
 (see, Home Ins. Co. v American Home Prods. Corp.,
 
 75 NY2d 196,
 
 supra).
 
 However, under the Georgia statute in effect at the time of the
 
 Simon
 
 action (Ga Code Annot § 51-12-5 [a]), a jury in a tort action with "aggravating circumstances” could award "additional damages to deter the wrongdoer * * * or as compensation for the wounded feelings of the plaintiff”.
 
 [3]
 
 The trial court indicated at the charge conference that her charge on punitive damages would track this statutory language. Inasmuch as the court charged the jury that the punitive damage award could include both punitive and compensatory elements and there was evidence to support each, the plaintiff must
 
 *317
 
 supply coverage.
 
 [4]
 

 Home Ins.
 
 firmly establishes that only when the damage award is of a "punitive nature” is indemnification precluded by New York policy. On the record before us, it appears that the damages awarded in the
 
 Simon
 
 action also had a compensatory purpose and plaintiff must indemnify its insured for them.
 

 In the
 
 Tucker
 
 action Texas law authorizing punitive awards permitted the jury to consider both exemplary and compensatory damages. Nevertheless, the court charged the jury that it should consider only exemplary damages and there is no evidence that the award was for other than deterrent purposes. Accordingly, because New York public policy precludes indemnification for the punitive damages awarded in the
 
 Tucker
 
 action, we must address the choice of law question not disposed of by our decision in
 
 Home Ins.
 

 Historically, courts faced with a choice of law question in contract cases applied the law of the State where the contract was made or was to be performed
 
 (see,
 
 Restatement of Conflict of Laws § 370). However, as the flaws in the mechanical application of these rigid rules became apparent, our Court developed more flexible approaches to choice of law questions. In
 
 Auten v Auten
 
 (308 NY 155) we inaugurated the use of "center of gravity” or "grouping of contacts” as the appropriate analytical approach to choice of law questions in contract cases.
 

 The purpose of grouping contacts is to establish which State has "the most significant relationship to the transaction and the parties”
 
 (see,
 
 Restatement [Second] of Conflict of Laws § 188 [1]). The Second Restatement, in addition to the traditionally determinative choice of law factor of the place of contracting, offers four other factors to be considered in establishing this "most significant relationship”: the places of negotiation and performance; the location of the subject matter; and the domicile or place of business of the contracting parties
 
 (see, id.,
 
 § 188 [2]). Shearson has its principal place of business in New York, where the insurance contract was negotiated and issued, and where claims under the policy were handled. The parties dispute whether Zurich, a Swiss corporation with
 
 *318
 
 its headquarters in Illinois, is a New York resident. In
 
 Matter of Zurich Ins. Co. v New York State Tax Commn.
 
 (144 AD2d 202), however, the Third Department noted that Zurich has maintained a selling office in New York, which has acted as the main supervisor of plaintiffs United States branch and its accounts examiner; thus, it stated, Zurich "is considered an adopted domestic of this State”
 
 (id.,
 
 at 202). The Appellate Division here took judicial notice of this ruling and concluded Zurich qualifies as a "New York insurer”. Thus, the Second Restatement factors to be considered in a grouping of contacts point to the application of New York law.
 

 Beyond these general contract principles, however, the Second Restatement also separately addresses that special subset of contracts that involves insurance, and takes the position that where liability insurance contracts are concerned, the applicable law is "the local law of the state which the parties understood was to be the principal location of the insured risk * * * unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6[
 
 5
 
 ] to the transaction and the parties”
 
 (see,
 
 Restatement [Second] of Conflict of Laws § 193). Shearson and Zurich take diametrically opposed views on the question of what the parties understood to be the location of the risk. Shearson maintains that it was orally agreed between the parties that the law of the judgment State would determine whether indemnification for punitive damages would be available. Zurich contends that there was no such oral agreement and that, because the risk insured against was the risk of financial loss, New York, as the center of Shearson’s financial interests, is the effective location of that risk. We need not, however, attempt to resolve this dispute, or even to try to shape an abstract rule of general applicability concerning the location of the risk in general liability contracts where the insured party conducts business in many States. Under the circumstances of this case, even if we were to determine that the risks insured against were located in the judgment States, New York public policy would still apply.
 

 We have previously noted that even in contract cases, where
 

 
 *319
 
 grouping of contacts is the primary analytical tool, in certain instances "the policies underlying conflicting laws in a contract dispute are readily identifiable and reflect strong governmental interests, and therefore should be considered”
 
 (see, Matter of Allstate Ins. Co. [Stolarz],
 
 81 NY2d 219, 226;
 
 see also, Zeevi & Sons v Grindlays Bank,
 
 37 NY2d 220, 227 [application of New York law to implementation of an international letter of credit, to maintain New York’s preeminent position as world finance center]). Theoretically, in a proper case, a foreign State’s sufficiently compelling public policy could preclude an application of New York law otherwise indicated by the grouping of contacts analysis, particularly where New York’s policy is weak or uncertain. This, however, is not that case. The strength of New York’s unambiguous policy against insurance coverage for punitive damages is such that an identical result obtains even when public policy and governmental interests are taken into account in the grouping of contacts.
 

 Initially, we note that such consideration of governmental interests does not transform the analytical paradigm into one of "interest analysis”, our approach to choice of law questions in tort cases. Under interest analysis, controlling effect must be given to the law of the jurisdiction which "has the greatest concern with the specific issue raised in the litigation”
 
 (see, Babcock v Jackson,
 
 12 NY2d 473, 481), unless the public policy exception, available only when " 'some deep-rooted tradition of the common weal’ ”, dictates a contrary result
 
 (see, Cooney v Osgood Mach.,
 
 81 NY2d 66, 78 [recently formulated New York policy permitting contribution against an employer did not preclude application of Missouri’s workers’ compensation statute which bars such contribution]). Although Shearson urges that tort cases provide the proper analytical framework for resolving conflicts over "tort-like issues” of punishment and deterrence, what is involved here is an insurance policy— a contract. Moreover, because a question of whether New York’s interest precludes indemnification for punitive damages focuses more on the conduct of the insured than on that of the insurer, the New York domicile of that insured becomes an even weightier contact once the governmental interest is taken into consideration.
 

 We recently affirmed the continuing and unabated force of our public policy precluding indemnification for punitive damages in
 
 Soto v State Farm Ins. Co.
 
 (83 NY2d 718,
 
 supra).
 
 In
 
 Soto,
 
 the insurance carrier had in apparent bad faith refused
 
 *320
 
 a settlement offer in the underlying personal injury action which was within the policy limits. At the ensuing trial, the injured parties recovered compensatory damages well in excess of the policy coverage, as well as a sizable award of punitive damages. The insured sought to recover from the insurance carrier the amount of the punitive damages. Although we noted that the punitive damages award under the circumstances was "no different in principle”
 
 (id.,
 
 at 723) from the award of excess personal injury damages, because both represented unindemnified liabilities to which the insured was exposed because of the carrier’s bad faith, we concluded that to allow recovery would nevertheless be "unsound public policy”
 
 (id.,
 
 at 724). Recognizing that the deterrent value of the rule precluding indemnification for punitive damages was "somewhat attenuated” in the context of the case, we nonetheless adhered to it because "the rule’s equally important goal of preserving the condemnatory and retributive character of punitive damage awards remains clear and undiminished”
 
 (id.,
 
 at 724). Here, the deterrent as well as the condemnatory character of the award is implicated.
 

 Admittedly, the policy question is more problematic in cases where the liability for punitive damages is solely vicarious. The issue has been widely debated
 
 (see, e.g.,
 
 Comment,
 
 Broker Churning: Who is Punished? Vicariously Assessed Punitive Damages in the Context of Brokerage Houses and Their Agents, 30
 
 Hous L Rev 1775 [1993]; Parlee,
 
 Vicarious Liability for Punitive Damages: Suggested Changes in the Law Through Policy Analysis,
 
 68 Marq L Rev 27 [1984]). Indeed, several States whose public policy prohibits liability insurance coverage of punitive damages have recognized an exception in cases of vicarious liability
 
 (see,
 
 Annotation,
 
 Liability Insurance Coverage as Extending to Liability for Punitive or Exemplary Damages,
 
 16 ALR4th 11, § 4).
 

 In Texas, unlike Georgia, there is no statutory authority explicitly authorizing insurance coverage for punitive damages, but the Texas courts have interpreted the general insurance law to permit such coverage, taking the view that coverage is particularly justifiable in cases of vicarious corporate liability
 
 (see, American Home Assur. Co. v Safway Steel Prods. Co.,
 
 743 SW2d 693, 703). New York, however, has taken the position that the imposition of vicarious punitive damages can significantly advance the deterrence goal by motivating an employer adequately to supervise its employees, particularly those whose actions may reflect what has come to be known as
 
 *321
 
 “the corporate culture” and implicate the "institutional conscience”
 
 (see, Aldrich v Thomson McKinnon Sec.,
 
 589 F Supp 683, 686 [SD NY],
 
 judgment vacated on other grounds
 
 756 F2d 243), and to take preventive and corrective measures
 
 (see, Loughry v Lincoln First Bank,
 
 67 NY2d 369, 377). We have not deviated from this policy choice. That Texas has made another, equally legitimate choice, is not sufficient to compel a New York court to disregard our State’s unswerving policy against permitting insurance indemnification for punitive damage awards, when New York choice of law principles dictate the application of that policy.
 

 Accordingly, the order of the Appellate Division should be modified, without costs, by declaring that the punitive damage award arising out of the
 
 Simon
 
 action is covered by the Zurich policy at issue, and, as so modified, affirmed.
 

 Chief Judge Kaye and Judges Titone, Bellacosa, Smith, Levine and Ciparick concur.
 

 Order modified, without costs, etc.
 

 [1]
 

 . Shearson then commenced two separate actions, one in Georgia and one in Texas, seeking declarations of coverage, and moved in Supreme Court for a dismissal or stay of Zurich’s declaratory judgment action because of the pendency of the Georgia and Texas actions. Supreme Court denied Shearson’s motion and granted Zurich’s cross motion for a preliminary injunction restraining Shearson from pursuing the Georgia and Texas actions.
 

 [2]
 

 . The slanderous statement was made in a telephone conversation between a Shearson attorney in New York and another attorney in California.
 

 [3]
 

 . Georgia has now amended its statute on punitive damages to specify that such damages "shall be awarded not as compensation to a plaintiff but solely to punish, penalize, or deter a defendant”
 
 (see,
 
 Ga Code Annot § 51-12-5.1 [c]).
 

 [4]
 

 . In reinstating the punitive award, the United States Court of Appeals indicated that there was evidence in the record supporting an award for deterrence and also "sufficient to demonstrate that the slander * * * caused an impairment of Simon’s reputation, personal humiliation, and mental anguish and suffering”
 
 (see, Simon v Shearson Lehman Bros.,
 
 895 F2d 1304, 1319,
 
 supra).
 

 [5]
 

 . Section 6 of Restatement (Second) of Conflict of Laws embodies the general choice of law principles. The Restatement notes in comment c to this section that these principles "will point in different directions in all but the simplest case”, and that especially in complex situations like contract cases, all that can be done is to state a general principle "which provides some clue to the correct approach”.