ADVANI ENTERPRISES, INC., Plaintiff,

v.

UNDERWRITERS AT LLOYDS, and Syndicate 735 at Lloyds of London, Defendants.

No. 95 Civ. 4864(CSH).

United States District Court, S.D. New York.

April 25, 1997.

Lilly Sullivan Barkan & Junge, P.C., New York City (Steven L. Balkan, Armand P. Mele, of counsel), for Plaintiff.

Kroll & Tract LLP, New York City (James W. Carbin, Christopher B. Turcotte, of counsel), for Defendants.

## MEMORANDUM OPINION AND ORDER

HAIGHT, Senior District Judge:

This is an action brought on a marine cargo insurance policy. The insured complains of the insurers' denial of coverage for a loss. The insurers move pursuant to Rule 56 Fed.R.Civ.P., for summary judgment dismissing the complaint.

### Background

For the most part, the facts are undisputed.

Plaintiff Advani Enterprises, Inc. ("Advani") is an American corporation which maintains an office to transact business at 146 West 29th Street, New York, NY. Defendants Underwriters at Lloyds and Syndicate 735 at Lloyds of London (hereinafter collectively "the defendants") are located in the United Kingdom and engage in the business, *inter alia*, of issuing marine policies of insurance.

Advani obtained marine cargo insurance from defendants to cover the transportation of three full container loads of porcelain dishware from the Far East to Port Said, Egypt. To obtain that insurance, Advani used the services of Grifon Insurance Agency, Inc., which transacts business in New York. The insurance upon which Advani bases this suit is evidenced by a Cover Note issued on behalf of defendants, and delivered by Grifon to Advani in New York.

The Cover Note identifies the type of insurance as "Marine Cargo." Advani is identified as one of the insureds. The description of the "conveyance" in the Cover Note reads as follows:

Road and/or Steamer and/or Steamers and/or any conveyances.

The description of the "voyage" in the Cover Note reads as follows:

Far East to Port Said, Egypt via Bonded Warehouse New York. Warranted full container loads Door to Door.

The Cover Note describes the "interest" insured as:

Porcelain Dishware in cartons in three full containers loads door to door.

The amount insured was $217,212, based upon cost insurance freight charges plus 10%. The Cover Note incorporated by reference several Institute Cargo Clauses.

The three containers of porcelain dishware covered by this insurance were carried by vessel to Port Said. The vessel was discharged on November 22, 1994 at the Port Said container terminal. The three containers in question contained a total of 1,167 cartons of porcelain dishware. While the containers remained at the container terminal, they were opened by Egyptian Customs Officers, apparently in accordance with the Customs Regulations in force at Port Said.

One Abdel Rehim Sayed Abdel Naeim, identified as an "official Customs Clearing Agent," has submitted a verified declaration on behalf of Advani which says in part:

When these containers were opened in the customs yard, we did notice that some quantity was rattling with the cartons dented. We could not, however, tell you how many cartons were in this condition as this was not our authority. This was for the correct survey authorities to check. Our concern was to clear and store the goods as per Port Said Customs regulations which we did correctly.

On December 10, 1994, the containers were unloaded at the container terminal and the cartons were transported by truck for storage at the port free zone warehouse, a distance of one mile from the container terminal. The consignees of the cargo were to take delivery at the free zone warehouse. Plaintiff appointed surveyors to inspect the cargo at the warehouse. The surveyors determined that 877 of the 1,167 cartons had sustained damage. Approximately 65% of the dishware was broken, amounting to a loss calculated at $150,000.

Advani made a claim upon defendants under the marine cargo policy evidenced by the Cover Note. Defendants denied coverage on the ground that Advani had breached that warranty in the Cover Note which provided: "Warranted full container loads Door to Door." Defendants' theory is that within the

context of completion of the insured voyage, "Door to Door" means delivery of the cargo to the consignee. Advani breached the warranty, defendants argue, because the last mile of the cargo's journey to the point of delivery to the consignee took place not in "full container loads," but rather in a number of trucks carrying cartons which had been removed from the containers.

Following defendants' refusal to pay on the policy of insurance, Advani commenced this action. Defendants now move for summary judgment.

### Discussion

Summary judgment is appropriate if the evidence offered demonstrates that there is no genuine issue as to any material fact under the governing law, and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The burden rests on the moving party to demonstrate the absence of a genuine issue of material fact, *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970), and the court must view the facts in the light most favorable to the non-moving party, *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). Nevertheless, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "The non-movant cannot 'escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts,' . . . or defeat the motion through 'mere speculation or conjecture.' " *Western World Insurance Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990) (citations omitted).

The first question that arises is whether Advani breached the warranty of "full container loads Door to Door." One begins with an analysis of what these phrases mean.

█ The meaning of the phrase "full container loads" is well settled by case law and the text writers. Definitions of phrases such as "full container loads" first appeared in collective bargaining agreements between ports and the local longshoremen's unions,

which were struggling to devise rules for the new technology of containerization of marine cargoes. In that context, the phrase "full container loads" refers to "fully loaded containers intended for a single consignee." *Humphrey v. International Longshoremen's Association AFL–CIO*, 401 F.Supp. 1401, 1406 (E.D.Va.1975). An English text, *O'May on Marine Insurance* at 193 n. 12 (1993 ed.), says: "A Full Container Load or F.C.L. is an arrangement whereby the shipper utilizes all the space in a container which he packs himself." Accordingly, the insurance in the case at bar contemplated three full container loads of goods furnished and packed by Advani, with no space in the containers being utilized by other shippers, and with the goods presumably consigned to a single consignee.[1]

■ As for the phrase "Door to Door," enlightenment is found in the Institute Cargo Clauses, industry-wide provisions incorporated by reference in the Cover Note. Sections 8.1 and 81.1 of the Institute Cargo Clauses provide in pertinent part:

> 8.1 This insurance attaches from the time the goods leave the warehouse or place of storage at the place named herein for the commencement of transit, continues during the ordinary course of transit and terminates [either]
>
> 8.1.1 on delivery to the Consignee's or other final warehouse or place of storage at the destination named herein. . . .

In the light of these authorities, I conclude that Advani warranted that the insured cargo would be carried in containers, fully loaded by Advani from "the warehouse or place of storage" at the place named for the commencement of transit (here the "Far East") to "delivery to the Consignees' or other final warehouse or place of storage at the destination named" (here Port Said).

■ Defendants at bar do not contend that Advani breached the first phrase of the warranty, which required "full container loads." The argument centers upon the second phrase, "Door to Door." In view of the cited authorities, I cannot accept Advani's contentions that the second "Door" in that phrase refers only to Port Said, so that delivery of the containers to the customs terminal constituted full compliance with the warranty. The undisputed fact is that the consignee did not maintain its "final warehouse or place of storage" at the container terminal. That facility existed at the free zone warehouse, a mile from the container terminal, to which the cartons of porcelain dishware were transported in trucks, and not in containers.

Advani's definition of the second "Door" as Port Said would leave the insurance in force until delivery of the cargo to the consignee at the free zone warehouse, but deprive defendants of the benefit of the warranty at an earlier time, when the cartons were removed from the containers at the container terminal. But I agree with defendants that the duration of the warranty is inherently coextensive with the coverage.

For these reasons, I conclude that Advani breached the warranty in question. No genuine issue of material fact requiring trial exists with respect to that proposition.

The remaining question is the effect of the insured's breach of warranty upon the insurance coverage. That question requires a choice of law analysis, a subject to which the briefs of counsel give only superficial attention. Advani makes reference to English law because it professes to find advantages there, but does not attempt to demonstrate why English law should control the case at bar. Defendants say that the case is governed by "United States law," without distinguishing for choice of law purposes between federal and state law.

---

1. To return to the collective bargaining agreement context, the "Rules on Containers" negotiated by certain ports and the longshoremen's union defined a "consolidated full container load" as consisting "of shipments consolidated into a single container whose cargo belongs to more than one consignee." That was contrasted with a "full shippers' load" or "shippers' load," which "is a container of cargo from one shipper to a single beneficial owner consignee." *International Longshoremen's Association, AFL–CIO v. N.L.R.B.*, 613 F.2d 890, 894 (D.C.Cir.1979) (footnote omitted). The salient feature in the case at bar is that the phrase "full container loads" in the Cover Note clearly contemplates three containers loaded by a single, shipper, here Advani.

The only basis of subject matter Advani alleges is diversity of citizenship. Complaint, ¶ 4. Being a suit brought on a contract of marine insurance, the case also falls within the Court's admiralty jurisdiction, although plaintiff does not plead it.

■ When the district court's jurisdiction depends upon diversity, the court looks to the choice of law rules of the state in which it sits, in this case New York. *Klaxon Co. v. Stentor Electric Manufacturing Co. Inc.*, 313 U.S. 487, 496–97, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). When the source of jurisdiction is admiralty, federal choice of law rules govern. *State Trading Corporation of India, Ltd. v. Assurancefor-eningen Skuld*, 921 F.2d 409, 414 (2d Cir. 1990).

I need not pursue the distinction further because New York and federal choice of law analyses are essentially the same. The New York courts use the " 'center of gravity' or 'grouping of contacts' as the appropriate analytical approach to choice of law questions in contract cases." *Zurich Insurance Co. v. Shearson Lehman Hutton, Inc.*, 84 N.Y.2d 309, 317, 618 N.Y.S.2d 609, 642 N.E.2d 1065 (Ct.App.1994) (action to determine coverage under an insurance policy). Federal choice of law also resolves choice of law questions "by ascertaining and valuing points of contact between the transaction and the states or governments whose competing laws are involved." *Lauritzen v. Larsen*, 345 U.S. 571, 582, 73 S.Ct. 921, 928, 97 L.Ed. 1254 (1953). *Lauritzen* arose in a tort context, but the Second Circuit made it plain in *State Trading*, 921 F.2d at 416, which considered a contract of marine insurance, that "*Lauritzen*'s approach to choice of law issues is relevant in addressing matters involving maritime contracts."

■ In the case at bar, to the extent that state law bears upon the effect of Advani's breach of warranty, that state is New York. Advani's place of business is in New York; it obtained the insurance through a New York broker; the Cover Note was delivered to Advani in New York. Those factors are sufficient, under either state or federal choice of law analysis, to displace English law as the governing law.

■ Defendants at bar do not rely upon New York law. Rather, they point to a federal maritime rule that "compliance with a warranty in a policy of insurance is a condition precedent to coverage and affords a complete defense if not complied with, regardless of whether causation between the breach and the injury exists." Main Brief at 7. There is indeed a line of lower federal court cases of considerable antiquity, in this circuit and elsewhere, upholding that proposition. *See, e.g., Levine v. Aetna Insurance Co.*, 139 F.2d 217, 218 (2d Cir.1943). However, in *Wilburn Boat Co. v. Fireman's Fund Insurance Co.*, 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955), the Supreme Court concluded that there was no judicially established admiralty rule governing maritime insurance warranties, and declined to fashion one, giving precedence instead to a state statute on the subject. *See Babel Afloat: Some Reflections on Uniformity in Maritime Law*, 28 Journal of Maritime Law and Commerce 189, 197–99 (1997).

The effect of *Wilburn Boat* is that the breach of warranty rule upon which defendants at bar rely to avoid coverage would give way to a contrary New York statute, if one existed. But in point of fact, it does not. On the contrary: at least in respect of contracts of marine insurance, the New York statute is consistent with the line of lower federal court cases previously discussed.

The pertinent provisions are found in § 3106 of the New York Insurance Law (McKinney 1985). Subsection 3106(b) states generally that a breach of warranty in an insurance policy "shall not avoid an insurance contract or defeat recovery thereunder unless such breach materially increases the risk of loss, damage or injury within the coverage of the contract." But subsection 3106(c) carves out an exception to the general rule. It provides: "This section shall not affect the express or implied warranties under a contract of marine insurance in respect to, appertaining to or in connection with any and all risks or perils of navigation, transit or transportation ... on, over or under any sea or inland waters ..." The effect of this statutory scheme, as Judge Patterson held in

**420**

*Newark Insurance Co. v. Blair,* 1994 A.M.C. 1061, 1066, 1994 WL 4410 (S.D.N.Y.1994) (not officially reported), is that "where a warranty in a marine insurance policy pertains to any risk of marine navigation, transit or transportation on seas or inland waters, the breach of such warranty precludes recovery under such policy."

 Defendants at bar are entitled to the benefit of that rule. Advani seeks to distinguish the cases upon which defendants rely by pointing out that some of them involve warranty limitations in hull policies upon the covered vessel's trading or navigation. But there is no principled distinction between such a warranty and the warranty in this cargo policy, particularly where the insurers presumably sought the warranty to minimize risks attendant upon removing the cargo from the containers and transporting them by other means while the coverage still attached.

For the foregoing reasons, the defendants' motion for summary judgment is granted. The Clerk of the Court is directed to dismiss the complaint with prejudice.

It is SO ORDERED.