In re ENRON CORPORATION SECURITIES, DERIVATIVE & "ERISA" LITIGATION.

Mark Newby, et al., Plaintiffs,

v.

Enron Corporation, et al., Defendants.

DK Acquisition Partners, L.P., et al., Plaintiffs,

v.

J.P. Morgan Chase & Co., et al., Defendants.

Nos. MDL 1446, CIV.A. H-01-3624, CIV.A. H-03-3393.

United States District Court, S.D. Texas, Houston Division.

June 29, 2004.

Jonathan B. Shoebotham, Porter & Hedges LLP, Houston, TX, Philip S. Beck, James B. Heaton, III, Joseph C. Smith, Jr., Bartlit, Beck, Herman, Palenchar and Scott, Chicago, IL, Jennifer E. Heisinger, Bartlit Beck et al., Denver, CO, Mikal C. Watts, Watts Law Firm LLP, Corpus Christi, TX, for Plaintiffs.

Charles A. Gall, Jenkens & Gilchrist, Dallas, TX, Richard Warren Mithoff, Jr., Mithoff and Jacks, Houston, TX, Bruce D. Angiolillo, Simpson Thacher et al., New York City, NY, for Defendants.

### MEMORANDUM AND ORDER

HARMON, District Judge.

Pending before the Court in the H-03-3393 are the following motions: (1) Plaintiffs DK Acquisition Partners, L.P., Kensington International Ltd., Rushmore Capital-I, LLP., and Springfield Associates, LLC's motion for remand (# 1712 in 01-

3624, #11 in H–03–3393); (2) Plaintiffs' unopposed motion for leave to file amended complaint (instrument #17); and (3) Plaintiffs' motion for ruling on motion to remand (#29).

This action was removed from the 152nd Judicial District Court of Harris County, Texas by Defendants Citigroup, Inc., Citibank, N.A., and Citigroup Global Markets, Inc. (f/k/a Salomon Smith Barney) (collectively, "the Citigroup Defendants") and by Defendants J.P. Morgan Chase & Co., JPMorgan Chase Bank, J.P. Morgan Securities, Inc. (collectively, "the JPMC Defendants") on the grounds that this suit is "related to" the Enron bankruptcy proceedings, pursuant to 28 U.S.C. §§ 1334, 1441, 1446, and 1452. In their original petition, Plaintiffs, which purportedly purchased Enron debt held by certain lenders under two "Enron Credit Facilities," seek to recover damages in tort proximately caused by Defendants' alleged knowing participation in and assistance to Enron in the making of materially false and misleading statements in a scheme to conceal Enron's deteriorating financial situation, in particular with respect to these two Enron Credit Facilities (i.e., a $1.25 billion, five-year credit facility agreement, dated May 18, 2000, and a $1.75 billion, 364–day revolving credit facility agreement dated May 14, 2001), under which Enron borrowed $3 billion on October 25, 2001.

### Notice of Removal

Defendants' Notice of Removal argues that the resolution of Plaintiffs' claims arising from the purchase of the Enron Credit Facilities will directly impact the administration of the debtor's estate, since Plaintiffs stand in the shoes of the lenders, and are thus unsecured creditors of Enron, and have filed proofs of claim in the bankruptcy proceedings. Specifically Citibank, N.A., the designated "Paying Agent" under the Credit Facilities, filed two "group" proofs of claim on behalf of itself and the other agents and lenders, and at least one lender has filed an individual proof of claim relating to the same Enron Credit Facilities. *See* #1, Exs. B, C, and D. In addition Defendants urge that Enron may owe contribution and/or indemnity to Defendants if Plaintiffs prevail here. Finally, Defendants urge, this suit shares common factual and legal questions with MDL 1446 so that coordination or consolidation with the multidistrict litigation would serve judicial economy.

### Plaintiffs' Motion for Remand

Insisting there is no "related to" bankruptcy jurisdiction here, Plaintiffs' motion for remand argues that this suit involves only state-law claims, does not name Enron as a party, and will have no effect on the administration of the debtor's estate because Plaintiffs and Defendants are unsecured creditors of Enron and because it is merely an "intramural squabble" between creditors. Plaintiffs insist that potential claims for contribution do not support "related to" bankruptcy jurisdiction under *Pacor* and Fifth Circuit law.

Furthermore, Plaintiffs argue, there can be no legally viable contractual claim for indemnity against Enron because the two Credit Agreements that govern Enron's indemnification responsibilities contain identical provisions (§ 9.04(c)) that preclude such a claim:

> The Borrower [Enron] agrees … to indemnify and hold harmless the Paying Agent [Citibank], each Co–Administrative Agent [Citibank and Chase Manhattan Bank] and each Bank [including Plaintiffs' predecessors in interest, the "Lenders"] and each of their respective directors, officers, employees and agents (collectively, *"Indemnified Parties"*) from and against any and all claims … for which any of them may become liable or which may be incurred by or asserted

against an Indemnified Party (*other than by another Indemnified Party* ), in each case in connection with or arising out of or by reason of any investigation, litigation, or proceeding, whether or not such Indemnified Party is a party thereto, arising out of, related to or in connection with this Agreement or any other Loan Document or any transaction in which any proceeds of all or any party of the Advances are applied .... [underlining in text; italics added by Plaintiffs] Exs. 2 (May 2000 Credit Agreement) and 3 (May 2001 Credit Agreement), § 9.04(c), to # 9. Plaintiffs, as successors in interest to the Lenders, insist their claims against Defendants are claims by indemnified parties, and therefore under the Credit Agreements Defendants cannot assert a contractual claim for indemnification against Enron.

Not only the Credit Agreements, but also the nature of the damages sought by Plaintiffs make Defendants' contribution and indemnification claims untenable, insist Plaintiffs. Defendants have conceded that Citibank has already filed two "group" proofs of claim against Enron for the moneys owed to Defendants and Plaintiffs under the Credit Agreements, while Defendants each timely filed separate proofs of claim for indemnity and contribution against Enron. Because Enron is insolvent, Plaintiffs argue, Plaintiffs will receive less from the Enron bankruptcy estate than they are owed under the Credit Agreements. In this action, Plaintiffs are seeking as damages the difference between what they are owed under the Credit Agreements and what they will receive from Enron. Thus if Plaintiffs prevail in this suit, the result will not affect the amount that Plaintiffs will receive [1] from Enron's bankruptcy estate.[2]

Moreover, contend Plaintiffs, if allowed to go forward Defendants' indemnity and contribution claims against Enron's estate for any additional damages that Defendants might be found liable to pay to Plaintiffs would result in duplicative liability to Enron, which is barred by Bankruptcy Rule 3005(a) because the group proof of claim supersedes subsequent proofs of claim for the same debt.

Alternatively, urge Plaintiffs, should the Court rule against remand, mandatory abstention pursuant to 28 U.S.C. § 1334(c)(2) should apply. Finally, should the Court disagree here too, Plaintiffs urge the

---

1. Plaintiffs note that any prayer for prejudgment interest or punitive damages, such as those in Citibank's proofs of claim, make no difference in the rationale. Furthermore, Bankruptcy Code §§ 502(b) and 506 bar any party from claiming post-petition interests. Finally, as a matter of law, Defendants may not seek contribution for punitive damages. *See, e.g., Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.,* 84 N.Y.2d 309, 618 N.Y.S.2d 609, 642 N.E.2d 1065 (1994); *C & H Nationwide, Inc. v. Thompson,* 903 S.W.2d 315, 320 (Tex.1994); Tex. Civ. Prac. & Rem.Code § 33.002(c)(2).

2. Plaintiffs provide a "round-number example":

Assume that Plaintiffs' claims against Enron total $100 million under the Credit Agreements. Assume further that Enron ultimately makes a distribution equal to 30% of those claims—meaning a total of $30 million. Plaintiffs are suing Defendants for the $70 million difference between those figures, not for the full $100 million owed by Enron. Regardless of the amount that Plaintiffs recover from Defendants, Plaintiffs will receive $30 million from the estate.

# 11 at 9. Defendants may not file an additional proof of claim beyond their pending contribution claims against the Enron estate for any amount for which they may be found liable to Plaintiffs because such a claim would result in duplicative liability for Enron, which is precluded by Bankruptcy Code § 501(b), 502(e) and 509(c) and Fed. R. Bankr.Proc. 3005, barring double claims.

Court to abstain or remand this action for equitable reasons pursuant to 28 U.S.C. § 1334(c)(1) and § 1452(b).

## Court's Conclusions

Because the Court has ruled on a number of these issues in other memoranda and orders in *Newby* and in coordinated cases, which it hereby incorporates, it references some of those rulings to reject arguments raised by Plaintiffs here. Moreover the Court addresses the new issues asserted by Plaintiffs.

■ This Court has previously held that "related to" bankruptcy jurisdiction under Second Circuit law, applicable here, is sustained by the kinds of facts alleged here, in particular claims related to the bankruptcy proceeding with intertwined factual and legal issues ("unity of identity of interest" of Defendants with the debtor, with alleged liability arising from the same nucleus of purported wrongdoing); proofs of claim filed in the bankruptcy proceedings[3] arising out of the same causes of action asserted here and contingent indemnity/contribution claims, both of which could conceivably affect the debtor's estate; rights of indemnification based on the laws of New York and of Texas[4]; and suits filed by Enron against a number of alleged tortfeasors, including some here. *See, e.g.,* # 995 at 16–2 and # 1714 at 8–37 in *Newby;* # 55 in H–03–1219. The debtor need not be named in this action for "related to" bankruptcy jurisdiction to exist. # 995 at 19–22 and # 2143 at 38 in *Newby;* # 56 at 5 & n. 1 in H–03–2264. In the massive multidistrict litigation before this Court are numerous interwoven claims and theories for liability involving Enron and its former officers and directors which have given rise to claims for contribution and indemnity that in total could have an enormous impact on the debtor's estate, which is clearly insufficient to satisfy the damages if Plaintiffs prevail. *See, e.g.,* # 995 at 10–16 in *Newby;* # 55 at 45 & n. 8 in H–03–1219; # 21 at 3–5 in G–03–967. Thus 11 U.S.C. §§ 502(e)[5] and 509(c)[6] of

---

3. Listed in # 13 at 7–8.

4. In their Memorandum of Law in Opposition to Plaintiffs Motion for Remand (# 13 at 6) Defendants cite the following statutory and common law sources for their contribution and indemnity claims here: (1) N.Y.C.P.L.R. §§ 1401 (establishing right to contribution among joint tortfeasors), 1601 (proportionate responsibility statute establishing rights to contribution and/or indemnity) (Consol.2003); (2) *Peoples' Democratic Rep. of Yemen v. Goodpasture, Inc.,* 782 F.2d 346, 351 (2d Cir. 1986) (observing that implied right to indemnification exists where "there is a great disparity in the fault of two tortfeasors, and one of the tortfeasors has paid for a loss that was primarily the responsibility of the other"); (3) *In re Crazy Eddie Sec. Litig.,* 802 F.Supp. 804, 815 (E.D.N.Y.1992) (holding that to the extent an auditor was held liable to plaintiffs for securities fraud, the auditor had a right of contribution from the employees of the audited company who had also purportedly defrauded plaintiffs); and (4) Tex. Civ. Prac. & Rem.Code Ann. §§ 32.001 *et seq.* (establishing right to contribution among joint tortfeasors), 33.001 *et seq.* (proportionate responsibility statute establishing rights to contribution and/or indemnity) (Vernon 2003).

5. Title 11 U.S.C. § 509(c) provides,

The court shall subordinate to the claim of a creditor and for the benefit of such creditor an allowed claim, by way of subrogation under this section, or for reimbursement or contribution, of an entity that is liable with the debtor on, or that has secured, such creditor's claim, until such creditor's claim is paid in full, either through payment under this title or otherwise.

6. Section 502(e)(1)(B) states that the Court "shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor, to the extent that ... such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution."

the Bankruptcy Code do not bar contribution and indemnity claims merely because they are contingent; contingent claims might still have a "conceivable effect" on the Enron bankruptcy proceeding. *See* # 995 at 14–16; # 55 at 45 & n.8 in H–03–1219.

Defendants contest Plaintiffs' characterization of them, based on their status as assignees of the lenders, as "indemnified parties" for purposes of section 9.04(c) of the Credit Agreements. Even if they are barred from asserting contractual claims for indemnification and contribution by that provision, Defendants argue that many of Defendants' contribution and indemnity claims against Enron and some of its officers and directors are based on statutory and common law sources, as indicated, and the Credit Agreements do not preclude their asserting such claims. Moreover, should the Court narrowly construe that provision and conclude that Defendants' statutory and common law rights of indemnity are barred by the language, it refers only to indemnity, not to Plaintiffs' rights of contribution. *See* 5 Corbin, *Corbin on Contracts* § 24.28 at 315–17 (Rev. ed. 1998) ("If the parties in their contract have specifically named one item or if they have specifically enumerated several items of a larger class, a reasonable inference is that they did not intend to include other, similar items not listed."). The Court agrees.

The Court also concurs with Defendants that Plaintiffs' reliance on 11 U.S.C. § 501(b)[7] and Rule 3005(a)[8] is in error. These two provisions serve to allow an alleged co-tortfeasor of the debtor to protect itself by filing a proof of claim where the creditor has failed to do so. Moreover, should the creditor later file proof of the same claim, the provisions protect against duplicative recovery by stating that the creditor's later filed claim supersedes the same claim earlier filed in the creditor's name by the entity liable with the debtor. *See, e.g., In re Hemingway Transport Inc.,* 993 F.2d 915, 927 & n. 13 (1st Cir.), *cert. denied sub nom. Kahn v. Juniper Dev. Group,* 510 U.S. 914, 114 S.Ct. 303, 126 L.Ed.2d 251 (1993). These provisions are inapplicable to the facts here because Plaintiffs (and their predecessors in interest, the lenders) have filed proofs of claim against Enron, and no alleged joint tortfeasors with the debtor have done so in their stead. Moreover Defendants explain that the "group" proofs of claim filed by Citibank were filed on behalf of all participants, including Plaintiffs or the lenders where the assignment to Plaintiffs was effected after the Stipulation was filed, in the Credit Facilities pursuant to a stipulation among them and Citibank as agent, and not because Plaintiffs failed to file proofs of claim. Stipulation, Scott Declaration, Exs. B and C (attachments to Proofs of Claim).

---

**7.** Section 501(b) states, "If a creditor does not timely file a proof of such creditor's claim, an entity that is liable to such creditor with the debtor, or that has secured such creditor, may file proof of such claim."

**8.** Federal Rule of Bankruptcy Procedure 3005(a) provides,

If a creditor that has not filed a proof of claim pursuant to Rule 3002 or 3003(c), an entity that is or may be liable with the debtor to that creditor, or who has secured that creditor, may, within 30 days after the expiration of the time for filing claims prescribed by Rule 3002(c) or 3003(c), whichever is applicable, execute and file a proof of claim in the name of the creditor, if known, or, if unknown, in the entity's own name. No distribution shall be made on the claim except on satisfactory proof that the original debt will be diminished by the amount of distribution. A proof of claim filed by a creditor pursuant to Rule 3002 or 3003(c) shall supersede the proof of claim filed pursuant to the first sentence of this subdivision.

Finally, regarding Plaintiffs' contention that the nature of the damages sought by Defendants make inconceivable any effect on the debtor's estate, this Court agrees with Defendants that Plaintiffs have mischaracterized the nature of Defendants contribution and indemnity claims in describing them as "for the same debt" as Plaintiffs' proofs of claim against Enron for monies owed under the Credit Facilities, and thus impermissibly duplicative. Instead, Defendants' claims arise from Enron's participation in the fraud, i.e., in the torts alleged by Plaintiffs in their petition. Contrary to their current representations, Plaintiffs are not seeking the difference between what they are contractually owed under the Credit Facilities and what they can recover from the debtor's estate in bankruptcy proceedings; with no cap on damages indicated, Plaintiffs' petition expressly seeks "all damages" suffered by Plaintiffs that were proximately caused by the torts allegedly committed by Defendants in participating in the collapse of Enron. Petition, ¶¶ 272, 282, 289, 292, 302, 311, 322, 331, 338, 346, 357 358, Prayer. Moreover, Plaintiffs have merged the money that Enron contractually owes under the Credit Facilities with the money it allegedly owes because of its wrongful, tortious participation in the alleged fraudulent scheme and attempted to characterize it all as one and the same. Defendants are seeking contribution and indemnity based on the tort claims in which Enron was a joint tortfeasor with Defendants, not contribution measured by the amount Enron owes Plaintiffs under the Credit Facilities. They are not claims on the same debt nor measured by the same debt, contrary to Plaintiffs' muddled portrayal. Furthermore Defendants additionally seek indemnity and contribution for costs of this litigation.

■ As for mandatory jurisdiction under 28 U.S.C. § 1334(c)(2), Plaintiffs' motion is untimely: this case was removed on August 22, 2003, and Plaintiffs failed to file their motion until September 24, 2003 even though requests for remand based on defects in removal other than lack of subject matter jurisdiction must be made within thirty days of the filing of the notice of removal. *Pierpoint v. Barnes,* 94 F.3d 813, 818 (2d Cir.1996), *cert. denied,* 520 U.S. 1209, 117 S.Ct. 1691, 137 L.Ed.2d 818 (1997); *Williams v. AC Spark Plugs,* 985 F.2d 783, 787 (5th Cir.1993).

Furthermore, even if the motion were timely, Plaintiffs have not demonstrated that this action, which will involve substantial overlap in the complex and complicated discovery ongoing in *Newby,* can be timely adjudicated in state court. *See, e.g.,* # 995 at 16–21 in *Newby;* # 56 in G–02–2999.

■ Nor does the Court find permissive abstention under § 1334(c)(1) or equitable remand under § 1452(b) appropriate in this complex and massive multidistrict litigation, which in the interests of fairness and practicality, necessitates a heightened emphasis on order, coordination, efficiency, and judicial economy. *Id.;* # 1714 at 56 in *Newby.*

For these reasons the Court denies the motion for remand and abstention.

Defendants J.P. Morgan Chase & Co., JPMorgan Chase Bank, J.P. Morgan Securities, Inc., Citigroup, Inc., Citibank, N.A., and Citigroup Global Markets, Inc. (f/k/a Salomon Smith Barney) have filed a response to Plaintiffs' "unopposed" motion for leave to amend. Noting that the Court originally stayed the deadlines for responsive pleadings to be filed until after class certification was resolved in *Newby* and *Tittle,* Defendants wish to make clear they are not conceding the validity or merit of any claims made in the new pleading nor waiving their right to assert any defenses

or arguments in agreeing to amendment. Since they filed this response, by agreement of the parties a new schedule for pleadings has been established in H–03–3393 (# 34) and answers to the amended complaint have been filed. To clear the record, the Court retroactively grants the motion for leave to amend, with deference to Defendants' conditions.

In sum, for the reasons expressed above, the Court

ORDERS that Plaintiffs' motion for remand (# 1712 in 01–3624, # 11 in H–03–3393) is DENIED. The Court further

ORDERS that Plaintiffs' motion for leave to amend (# 17 in H–03–3393) is retroactively GRANTED. Finally, Plaintiffs' motion for ruling (# 29) is now MOOT.