[893 NYS2d 31]

In the Matter of the Liquidation of MIDLAND INSURANCE COM-
PANY. AMERICAN STANDARD INC. et al., Respondents; SWISS
REINSURANCE AMERICA CORPORATION et al., Intervenors-
Appellants, and SUPERINTENDENT OF INSURANCE OF THE
STATE OF NEW YORK, et al., Appellants.

First Department, January 12, 2010

**APPEARANCES OF COUNSEL**

*Simpson Thacher & Bartlett LLP*, New York City (*Jeffrey Coviello, Barry R. Ostrager* and *Mary Kay Vyskocil* of counsel), for Swiss Reinsurance America Corporation and others, appellants.

*Crowell & Moring LLP*, New York City (*Paul W. Kalish* and *Harry P. Cohen* of counsel), for Everest Reinsurance Company, appellant.

*Andrew J. Lorin*, New York City (*James E. D'Auguste, Andrew J. Lorin* and *Judy H. Kim* of counsel), and *McCarthy, Leonard & Kaemmerer L.C.*, Chesterfield, Missouri (*James C. Owen* of counsel), for Superintendent of Insurance of the State of New York, appellant.

*Sugarman, Rogers, Barshak & Cohen, P.C.*, Boston, Massachusetts (*Andrew Kanter* of counsel), for National Casualty Company and others, appellants.

*Gilbert Oshinsky, LLP*, Washington, D.C. (*Ted J. Feldman* of counsel), for The Babcock & Wilcox Company Asbestos PI Trust and others, respondents.

*Eckert Seamans Cherin & Mellott, LLC*, White Plains (*Steven R. Kramer* of counsel), for CBS Corporation, respondent.

*Pillsbury Winthrop LLP*, New York City (*Kerry A. Brennan* of counsel), for Congoleum Corporation, respondent.

*McCarter & English, LLP*, New York City (*Gita F. Rothschild* and *Brian J. Osias* of counsel), for The Flintkote Company, respondent.

**OPINION OF THE COURT**

DeGrasse, J.

This appeal centers on the precedential effect of our opinion in *Matter of Midland Ins. Co.* (269 AD2d 50 [2000] [hereinafter referred to as *Midland LAQ*]), which we followed in this liquidation proceeding. The issues before us involve the doctrines of stare decisis and law of the case as well as public policy.

Midland Insurance Company was incorporated under New York law as a stock casualty insurer in 1959. Under its charter, Midland was authorized to transact business in all 50 states, the District of Columbia, Puerto Rico, the United States Virgin Islands and Canada. As a multiline carrier, Midland wrote a substantial amount of excess coverage for Fortune 500 companies that began to face significant environmental, asbestos and product liability claims in the 1980s. By Supreme Court order in 1986, Midland was adjudged insolvent and placed in liquidation. The Superintendent of Insurance, Midland's statutory liquidator, has made recommendations to the court regarding distribution payments out of the liquidation estate. Since 1994 objections to the Superintendent's recommendations for the denial of policyholders' claims have been referred to a referee to hear and report. Citing *Midland LAQ*, the Superintendent has recommended the denial of many of these claims on the ground that they are not maintainable under New York law as opposed to the laws of other jurisdictions. To facilitate the handling of hundreds of claims, certain major policyholders (MPHs), the Superintendent and Midland's reinsurers stipulated to a case management order that provides for the IAS court's determina-

tion of the common issue of "whether New York substantive law governs the interpretation and application of the Midland insurance policies at issue in this litigation or whether the Court must conduct an analysis utilizing the New York choice-of-law test to determine which jurisdiction's or jurisdictions' law(s) apply" (20 Misc 3d 488, 492 [2008]). After briefing, the IAS court determined that the referee should evaluate each objection on the basis of an individualized choice-of-law analysis, giving predominant weight to the insured's principal place of business, where appropriate. For reasons that follow, we now reverse and find the substantive law of New York applicable. A brief discussion of *Midland LAQ* is necessary in order to bring into focus the issues before us.

Lac D'Amiante du Quebec, Ltee. (LAQ) was a Delaware corporation with a principal place of business in Quebec, Canada. It was also a wholly owned subsidiary of American Smelting & Refining Co. (ASARCO), a New Jersey corporation with a principal place of business in New York. LAQ, which mined, milled and sold asbestos until it ceased operations in 1986, was named as an additional insured under liability insurance policies obtained by ASARCO. Those policies included a follow-form excess policy issued by Midland. In 1983, LAQ brought an action in United States District Court for the District of New Jersey, for a declaratory judgment on the issue of what triggered coverage. Midland and two other carriers were defendants in that action. The District Court resolved the issue based upon an interpretation of New Jersey law, and found Midland and the other defendant insurers jointly and severally liable under each triggered policy (*see Lac D'Amiante Du Quebec, Ltee. v American Home Assur. Co.*, 613 F Supp 1549 [D NJ 1985]). The United States Court of Appeals for the Third Circuit vacated the judgment against Midland in light of the pendency of this liquidation proceeding and directed the District Court to dismiss that portion of the action (864 F2d 1033 [1988]).

Following the dismissal, LAQ filed a claim in this proceeding for indemnity under Midland's policy for payments it had made in asbestos-related claims. By stipulation, two issues were to be decided by this Court in *Midland LAQ* (269 AD2d at 56). The first issue concerned the factor or factors deemed sufficient to trigger coverage under Midland's policy for asbestos-related bodily injuries. The second issue involved the proper application of the "prior insurance" and "other insurance" clauses in another carrier's umbrella policy under the follow-form provision

of Midland's policy. In resolving the first issue, we defined a "triggering event" based upon an interpretation of the language of the policies involved (*id.* at 59-62). We resolved the second issue by determining that Midland, as an insurer in liquidation, did not have collectible insurance, which is a condition precedent to the application of the "other insurance" clause under any policy (*id.* at 67). Furthermore, we recognized public policy's requirement that in a liquidation proceeding all creditors must be treated equally. Therefore, "[i]n order to assure that all Midland creditors are treated equally and in accordance with conflicts of law principles, it is necessary that the court apply New York law in ascertaining" when coverage is triggered (*id.* at 63). The first issue on the instant appeal is whether this enunciation of the applicability of New York law is binding under the doctrine of stare decisis.

As noted above, we held in *Midland LAQ* that New York law controls (*id.* at 58). The MPHs contend that stare decisis does not apply because the choice-of-law issue was not actually litigated at the time of that appeal. Nevertheless, the absence of briefing is not what distinguishes a dictum from a holding (*United States v Pierre*, 781 F2d 329, 333 [2d Cir 1986]). "[T]he mere fact that an issue was not argued or briefed does not undermine the precedential force of a considered holding" (*Monell v New York City Dept. of Social Servs.*, 436 US 658, 709 n 6 [1978, Powell, J., concurring]). To be sure, in *Midland LAQ* we did not consider the dictates of public policy in a vacuum. The precise issue addressed by our now disputed holding was briefed before the IAS court that rendered the underlying decision. Accordingly, with respect to the issue framed by the case management order, our application of New York law in *Midland LAQ* is binding upon the IAS court under the doctrine of stare decisis.

Midland LAQ's holding is also binding because it is the law of the case. Under that doctrine, parties and their privies are precluded from relitigating an issue decided in an ongoing proceeding where there previously was a full and fair opportunity to address the issue (*see Briggs v Chapman*, 53 AD3d 900, 901 [2008]). It does not avail the MPHs to argue that they are not privies of the parties that appeared when *Midland LAQ* was decided. Privity is established where the interests of the nonparty can be said to have been represented in the prior proceeding (*Green v Santa Fe Indus.*, 70 NY2d 244, 253 [1987]). For example, there can be privity, in an action brought by a trustee in bankruptcy, to make a judgment preclusive of a

subsequent action by a creditor (*id.*, citing *Stissing Natl. Bank v Kaplan*, 28 AD2d 1159, 1160 [1967]). Accordingly, we find that privity exists between LAQ and the MPHs by reason of their identical interests as policyholders-claimants in the same liquidation proceeding.

The IAS court recognized that *Midland LAQ* stands for the proposition that New York law must apply to all claims in a liquidation proceeding, but held that it was overruled by our subsequent decision in *Certain Underwriters at Lloyd's, London v Foster Wheeler Corp.* (36 AD3d 17 [2006], *affd* 9 NY3d 928 [2007]). That conclusion is erroneous.

The issue in *Foster Wheeler* was whether New York or New Jersey law governed excess liability insurance policies under which an insured sought indemnity and defense costs for asbestos-related personal injury claims asserted against it.

In *Foster Wheeler* we held that "[u]nder New York's 'center of gravity' or 'grouping of contacts' approach to choice-of-law questions in contract cases, we are required to apply the law of the state with the 'most significant relationship to the transaction and the parties' " (36 AD3d at 21, quoting *Zurich Ins. Co. v Shearson Lehman Hutton*, 84 NY2d 309, 317 [1994]). Under the facts before us in *Foster Wheeler*, we applied the law of New Jersey—the insured's principal place of business—to its claims for partial indemnity and defense costs under its excess liability insurance policies (36 AD3d at 25). The "center of gravity" or "grouping of contacts" approach, however, is not absolute. In the subset of contracts involving insurance, it is applied unless with respect to a particular issue some other state has a more significant relationship to the transaction and the parties (*Zurich*, 84 NY2d at 318).

Here, New York has a more significant relationship to liquidation and the parties affected thereby by virtue of the Legislature's interest in making distributions from an insolvent insurer's estate "in a manner that will assure the proper recognition of priorities and a reasonable balance between the expeditious completion of the liquidation and the protection of unliquidated and undetermined claims" (Insurance Law § 7434 [a] [1]). As noted by the Court of Appeals, article 74 of the Insurance Law is a "comprehensive mechanism" devised for the protection of creditors, policyholders and the general public (*Matter of Dinallo v DiNapoli*, 9 NY3d 94, 97 [2007]). Based on this paramount state interest, we distinguish *Foster Wheeler*, which involved contract claims against a solvent insurer. Ac-

cordingly, we find that *Foster Wheeler* provides no reason to depart from our holding that public policy requires all creditors in a liquidation proceeding to be treated equally.

In 1999, Insurance Law § 7434 (a) was amended to establish a priority for the distribution of an insolvent insurer's estate among nine classes of creditors (L 1999, ch 135, § 5). The statute provides that no subclasses shall be established within any class (§ 7434 [a] [1]). In 2005, subsection (e) was added to the statute, making the distribution hierarchy applicable as of its effective date regardless of when the liquidation proceeding was commenced (L 2005, ch 33, § 2). The claims of the MPHs and other policyholders fall within class two, claims under policies (§ 7434 [a] [1] [ii]). The interpretation of Midland's policies under the laws of more than one state would cause disparate results in the determination of policyholders' claims. These differences in treatment would run afoul of the statute by creating subclasses among the policyholders-creditors. Therefore, section 7434 necessitates the interpretation of Midland's policies under the law of one state, even accepting the MPHs' argument that the statute's amendment abrogated the requirement of equality among creditors in liquidation.

Accordingly, the order of the Supreme Court, New York County (Michael D. Stallman, J.), entered April 21, 2008, which granted the major policyholders' motion for partial summary judgment declaring that for each policyholder an individualized choice-of-law review must be undertaken following the "grouping of contacts" approach and giving predominant weight to the policyholder's principal place of business, and denied the intervening reinsurers' cross motion for partial summary judgment on the applicability of New York substantive law to all policyholder claims under the Midland policies in the liquidation, should be reversed, on the law, without costs, the MPHs' motion denied, and the intervening reinsurers' cross motion granted, declaring that New York substantive law governs the interpretation and application of the Midland insurance policies at issue in this liquidation proceeding.

MAZZARELLI, J.P., SAXE and CATTERSON, JJ., concur.

Order, Supreme Court, New York County, entered April 21, 2008, reversed, on the law, without costs, the MPHs' motion denied, and the intervening reinsurers' cross motion granted, declaring that New York substantive law governs the interpre-

tation and application of the Midland insurance policies at issue in this liquidation proceeding.