**FELDMAN LAW GROUP P.C. as assignee of the Hyman Companies, Inc. d/b/a Landau Jewelry, Plaintiff,**

v.

**LIBERTY MUTUAL INSURANCE COMPANY a/k/a Liberty Mutual Group, Defendant.**

**No. 11 Civ. 425(SAS).**

United States District Court, S.D. New York.

June 30, 2011.

Opinion Denying Reconsideration Aug. 10, 2011.

Stephen E. Feldman, Esq., Robert H. Morse, Esq., Kalpana Nagampalli, Esq., Feldman Law Group, P.C., New York, NY, for Plaintiff.

Marshall T. Potashner, Esq., Jaffe & Asher LLP, New York, NY, for Defendant.

## OPINION AND ORDER

SHIRA A. SCHEINDLIN, District Judge:

## I. INTRODUCTION

Feldman Law Group ("FLG") brings suit against Liberty Mutual Insurance Company ("Liberty") as a result of Liberty's refusal to provide a defense to The Hyman Companies ("Hyman") in an earlier action before this Court.[1] Liberty now moves to dismiss for failure to state a claim. For the reasons discussed below, Liberty's motion is granted.

## II. BACKGROUND

On January 24, 2007, Van Cleef and Arpels Logistics SA ("Van Cleef") brought suit for copyright and trade dress infringement[2] against Hyman, an Allentown, Pennsylvania, corporation with jewelry stores nationwide,[3] including Landau Jewelry in New York.[4] Van Cleef alleged that

---

1. *See Van Cleef & Arpels Logistics, S.A. v. Goldstein Jewelers,* 08 Civ. 3007(SAS).

2. *See* Complaint ¶ 9.

3. *See id.* ¶ 4.

4. *See* Complaint in *Van Cleef & Arpels Logistics, S.A. v. Landau Jewelry* ("Underlying Complaint"), Ex. 2 to Complaint, ¶ 4.

Hyman produced jewelry featuring a series of elements representing the Alhambra Trade Dress, which is copyrighted Van Cleef property.[5] Alleging that Hyman's jewelry was "confusingly similar" to its own, Van Cleef complained that Hyman was responsible for trade dress infringement as a violation of Section 43(a) of the Lanham Act,[6] common law trade dress infringement and unfair competition, and copyright infringement.[7] While Van Cleef asked the court for injunctive relief to halt Hyman from continuing to advertise the offending jewelry and requested that all advertising material, such as catalogs and circulars, be destroyed,[8] it was the underlying production, and subsequent sale and distribution, of the jewelry that subjected Hyman to Van Cleef's action.[9]

Hyman hired FLG as defense counsel and apprised Liberty, its insurance provider, of the pending litigation.[10] Hyman requested that Liberty provide a defense pursuant to the insurance policy Hyman had purchased.[11] The policy states that the insurance company has "the right and duty to defend" in any suit seeking damages for "personal and advertising injury."[12] FLG avers that Liberty was duty-bound to defend Hyman "against claims of

Trade Dress and Copyright Infringement resulting from insured's alleged advertisement of infringing goods and products."[13] The policy, which is attached to and incorporated by reference into the Complaint, only covers injury arising out of "the use of another's advertising idea" or "infringing upon another's copyright, trade dress or slogan in your advertisement."[14]

The policy contains fifteen exclusions of acts which are not covered. Exclusion "i" pertains to " '[p]ersonal and advertising injury' arising out of infringement of copyright, patent, trademark, trade secret or other intellectual property rights or out of securities fraud."[15] The policy makes clear that the exclusion does not apply to trade dress or copyright infringement in an advertisement, but otherwise exempts intellectual property-related offenses from coverage.[16]

In a letter dated September 27, 2010, a Liberty representative outlined Liberty's refusal to provide a defense.[17] Liberty explained that while Van Cleef requested that Hyman be enjoined from continuing to advertise the offending jewelry, the trade dress and copyright infringement claims did not stem from Hyman's advertising.[18] Liberty further explained that

---

5. *See id.* ¶ 17.

6. *See* 15 U.S.C. § 1125(a).

7. *See* Underlying Complaint ¶ 20; *see also* 17 U.S.C. § 501 (outlining copyright infringement claim).

8. *See* Underlying Complaint ¶¶ 21–23.

9. *See id.* ¶¶ 20, 23, 29, 35.

10. *See* Complaint ¶¶ 13–14.

11. *See id.* ¶ 14.

12. Liberty Mutual Insurance Policy Endorsements ("Liberty Policy"), Ex. 1 to Complaint, at 1.

13. Complaint ¶ 29.

14. Liberty Policy at 4.

15. *Id.* at 2.

16. *See id.*

17. *See* 9/27/10 Letter from Defendant to Plaintiff ("Denial Letter"), Ex. 3 to Complaint. The letter states that Liberty originally set forth its reasons for denying coverage on October 25, 2007, but that document was not submitted to the Court with the Complaint.

18. *See id.*

although Van Cleef did allege that Hyman distributed its jewelry by "other means," such an allegation was "not sufficiently specific as to constitute an allegation of advertising." [19] Liberty's letter also contended that because a Pennsylvania sales office sold the insurance policy to Hyman in Pennsylvania, that state's law applied.[20] As a result, Liberty maintained that any allegations extrinsic to the Complaint could not be considered in determining whether the policy covers a claim.[21]

Van Cleef's action against Hyman was settled at Hyman's expense, prompting it to file for bankruptcy.[22] As the assignee of Hyman's rights and interests in the insurance policy at issue, FLG now brings suit against Liberty.[23] FLG claims breach of contract, unfair insurance practices, and common law deceit and fraud.[24] Regarding the claim of unfair insurance practices, FLG asserts that Liberty "intentionally misrepresented its policy's true nature." [25] As for the deceit and fraud charges, FLG claims that "Liberty deceived the insured when it advertised, promoted, and sold its insurance policy to Hyman." [26] Liberty now moves to dismiss all three counts for failure to state a claim.

## III. CHOICE–OF–LAW ANALYSIS

### A. New York Choice–of–Law

In diversity actions, federal courts follow the choice-of-law rules of the forum state to determine the controlling substantive law.[27] Under New York choice-of-law rules, courts first determine whether there is a substantive conflict between the laws of the relevant choices.[28] "In the absence of substantive difference . . . a New York court will dispense with choice of law analysis; and if New York law is among the relevant choices, New York courts are free to apply it." [29] If there is a conflict, in a contract case, "[i]t is well settled that New York has long recognized 'the use of a center of gravity or grouping of contacts analytical approach to choice of law questions.' " [30] Among the factors to consider are "the place of contracting, the places of negotiation and performance, the location of the subject matter, and the domicile or place of business of the contracting parties." [31] In the in-

19. *Id.*

20. *See id.*

21. *See id.* (citing *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.,* 589 Pa. 317, 908 A.2d 888 (2006)).

22. *See* Complaint ¶ 16.

23. *See id.* ¶ 1.

24. *See id.*

25. *Id.* ¶ 36.

26. *Id.* ¶ 39.

27. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Global-Net Financial.com, Inc. v. Frank Crystal & Co.,* 449 F.3d 377, 382 (2d Cir.2006).

28. *See GlobalNet Financial.com,* 449 F.3d at 382 (quoting *In re Allstate Ins. Co. (Stolarz),* 81 N.Y.2d 219, 223, 597 N.Y.S.2d 904, 613 N.E.2d 936 (1993)) ("The New York Court of Appeals has held that 'the first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved.' ").

29. *International Bus. Mach. Corp. v. Liberty Mut. Ins. Co.,* 363 F.3d 137, 143 (2d Cir. 2004).

30. *In re Liquidation of Midland Ins. Co.,* 16 N.Y.3d 536, 543, 923 N.Y.S.2d 396, 947 N.E.2d 1174 (2011) (quoting *Zurich Ins. Co. v. Shearson Lehman Hutton,* 84 N.Y.2d 309, 317, 618 N.Y.S.2d 609, 642 N.E.2d 1065 (1994) (citations omitted)).

31. *Tri–State Emp't Servs., Inc. v. Mountbatten Sur. Co., Inc.,* 295 F.3d 256, 261 (2d Cir.

surance context, courts typically apply the law of the state "which the parties understood was to be the principal location of the insured risk,"[32] unless the policy in question "cover[s] risks that are spread throughout multiple states."[33] In such cases, the goals of " 'certainty, predictability and uniformity of result' and 'ease in the determination and application of the law to be applied' " augur in favor of applying the laws of the insured's principal domicile.[34]

 To resolve conflicts in tort cases, New York applies an "interest analysis" to identify the jurisdiction that has the greatest interest in the litigation based on the occurrences within each jurisdiction, or contacts of the parties with each jurisdiction, that " 'relate to the purpose of the particular law in conflict.' "[35] When the law is one which regulates conduct, "the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders."[36]

A tort occurs in "the place where the injury was inflicted," which is generally where the plaintiff is located.[37]

## B. Application

 FLG contends that New York law applies, while Liberty maintains that the Court should apply Pennsylvania law. Comparing New York and Pennsylvania law governing a contractual duty-to-defend, there is at least one important difference. In Pennsylvania, " '[t]he obligation of an insurer to defend an action against the insured is fixed solely by the allegations in the underlying complaint.' "[38] In contrast, in New York, "[t]he duty of an insurer to defend arises whenever the allegations within the four corners of the underlying complaint potentially give rise to a covered claim, *or* where the insurer 'has actual knowledge of facts establishing a reasonable possibility of coverage.' "[39] The difference is subtle, but important.

2002), *certified question accepted*, 98 N.Y.2d 726, 749 N.Y.S.2d 474, 779 N.E.2d 185 (2002), *certified question answered*, 99 N.Y.2d 476, 758 N.Y.S.2d 595, 788 N.E.2d 1023 (2003).

**32.** *Certain Underwriters at Lloyd's, London v. Foster Wheeler Corp.*, 36 A.D.3d 17, 822 N.Y.S.2d 30, 33 (2006), *aff'd*, 9 N.Y.3d 928, 844 N.Y.S.2d 773, 876 N.E.2d 500 (2007) (quoting *Zurich*, 84 N.Y.2d at 318 n. 5, 618 N.Y.S.2d 609, 642 N.E.2d 1065).

**33.** *Id.* at 33.

**34.** *Id.* at 34 (quoting Restatement (Second) of Conflict of Laws § 6(2)(f)).

**35.** *GlobalNet Financial.com*, 449 F.3d at 384 (quoting *Schultz v. Boy Scouts of Am., Inc.*, 65 N.Y.2d 189, 197, 491 N.Y.S.2d 90, 480 N.E.2d 679 (1985)). *Accord Finance One Pub. Co. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 337 (2d Cir.2005) (citation omitted) (explaining that the interest analysis is a "flexible approach intended to give controlling effect to the law of the jurisdiction which, because of

its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation").

**36.** *GlobalNet Financial.com*, 449 F.3d at 384.

**37.** *Cromer Fin. Ltd. v. Berger*, 137 F.Supp.2d 452, 492 (S.D.N.Y.2001) (citation and quotation marks omitted). *Accord Sack v. Low*, 478 F.2d 360, 365–66 (2d Cir.1973) (interpreting New York law).

**38.** *Nationwide Mut. Fire Ins. Co. v. Malofiy*, CIV. A. No. 10–2410, 2011 WL 1050050, at *5 (E.D.Pa. Mar. 22, 2011) (quoting *Erie Ins. Exch. v. Fidler*, 808 A.2d 587, 590 (Pa.Super.2002)).

**39.** *Nunez v. Mariners Temple Baptist Church*, No. 103308/07, 25 Misc.3d 1212(A), 2009 WL 3254510, at *4 (Sup.Ct.N.Y.Co. Oct. 8, 2009) (quoting *Fitzpatrick v. American Honda Motor Co.*, 78 N.Y.2d 61, 65–67, 571 N.Y.S.2d 672, 575 N.E.2d 90 (1991)) (emphasis added).

Whereas Pennsylvania employs a strict four-corners rule, New York will impose a duty to defend based on knowledge extrinsic to the contract. This difference has the potential to fundamentally alter a court's analysis, and as such represents a conflict sufficient to require a formal choice-of-law analysis.

In undertaking such an inquiry, I conclude that Pennsylvania law applies and that plaintiff's contention that New York law should apply (because the underlying lawsuit and settlement occurred in New York) is unavailing. The policy itself, which functions as the contract, was sold by Liberty's Allentown, Pennsylvania, sales office and listed the insured as an Allentown, Pennsylvania, corporation. Though it is certainly true that the insured risk was spread among multiple states—including New York, where Landau Jewelry, the underlying action's plaintiff, was located—in such cases it is appropriate to look to the insured's domicile, which is Pennsylvania.[40]

As for the actions in tort, FLG makes two claims: unfair insurance practices and common law deceit and fraud. On these claims, the laws of New York and Pennsylvania appear to be in accord. With respect to unfair insurance practices, neither state explicitly permits such a claim, although both allow an alternate route to seek damages for such conduct.[41] As to fraud and deceit, the elements of these causes of action in the two states are virtually identical.[42]

In the absence of an actual conflict, courts may apply New York law, but are not required to do so. While FLG's complaint lacks specific factual allegations detailing the nature of Liberty's unfair insurance practices, deceit, and fraud, the gist seems to be that Liberty was less-than-truthful in advertising and selling its policy. All the facts before the Court suggest that any alleged misrepre-

**40.** In a May 5, 2011 letter to the Court, FLG urged the Court to consider in its choice-of-law analysis *U.B. Vehicle Leasing, Inc. v. Atlantic Mut. Ins., Co.*, No. 00 Civ. 9266, 2004 WL 503729, at *5 (S.D.N.Y. Mar. 12, 2004). In holding that New York law applied, Judge Denny Chin relied on the fact that the underlying lawsuit was brought in New York and that therefore the alleged wrongful conduct by the insurance agency occurred in New York. FLG, however, omitted Judge Chin's earlier observation that the location where the insurance policy in controversy was signed was also an important factor. Further, *U.B. Vehicle Leasing* relied upon *Tri-State Employment Services, Inc. v. Mountbatten Surety Co., Inc.* in reaching its decision. As outlined above, there the Second Circuit advised district courts to also consider, *inter alia,* "the place of contracting, the places of negotiation and performance, the location of the subject matter, and the domicile or place of business of the contracting parties." 295 F.3d at 261. For the reasons outlined herein, on balance, these factors counsel in favor of applying Pennsylvania law.

**41.** *Compare State Farm Mut. Auto. Ins. Co. v. Rabiner,* 749 F.Supp.2d 94, 101 (E.D.N.Y. 2010) ("The Court of Appeals [in *Rocanova v. Equitable Life Assur. Soc. of U.S.,* 83 N.Y.2d 603, 612 N.Y.S.2d 339, 634 N.E.2d 940 (1994)] . . . found that § 2601 of the Insurance Law did not create an independent basis for a private right of action. . . . [It] also acknowledged that any common-law right to sue an insurer for punitive damages was not preempted by the enactment of section 2601.") *with Hardy v. Pennock Ins. Agency, Inc.,* 365 Pa.Super. 206, 215, 529 A.2d 471 (1987) (citations omitted) ("[T]his Court [has] held that even where the Unfair Insurance Practices Act applies [and eschews granting a private right of action], insureds may raise a common law cause of action against the insurer for fraud and deceit.").

**42.** *Compare Banks v. Jerome Taylor & Assoc.,* 700 A.2d 1329, 1333 (Pa.Super.Ct.1997) *with Small v. Lorillard Tobacco Co., Inc.,* 94 N.Y.S.2d 43, 57, 698 N.Y.S.2d 615, 720 N.E.2d 892 (1999) (citation omitted).

sentations took place in Pennsylvania.[43] As such, I will apply Pennsylvania law to all claims.

## IV. APPLICABLE SUBSTANTIVE LAW

### A. Motion to Dismiss

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court evaluates the sufficiency of the complaint under the "two-pronged approach" dictated by the Supreme Court in *Ashcroft v. Iqbal.*[44] First, a court " 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.' "[45] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to withstand a motion to dismiss.[46] Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."[47] To survive a Rule 12(b)(6) motion to dismiss, the allegations in the complaint must meet a standard of "plausibility."[48] A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[49] Plausibility "is not akin to a probability requirement;" rather, plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."[50]

 "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."[51] The court may also consider a document that is not incorporated by reference, "where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint."[52] Allegations made within the complaint that are "contradicted by more specific allegations or documentary evidence" are not entitled to a presumption of truthfulness.[53]

---

**43.** Indeed, it is highly unlikely that any such activities took place in New York. There is perhaps a colorable claim that Massachusetts, the corporate domicile of Liberty, was the location of the alleged tortious conduct, but neither party makes such an argument and there are no facts to support it.

**44.** 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009).

**45.** *Hayden v. Paterson,* 594 F.3d 150, 161 (2d Cir.2010) (quoting *Iqbal,* 129 S.Ct. at 1950). *Accord Ruston v. Town Bd. for Town of Skaneateles,* 610 F.3d 55, 59 (2d Cir.2010).

**46.** *Iqbal,* 129 S.Ct. at 1949 (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

**47.** *Id.* at 1950. *Accord Kiobel v. Royal Dutch Petroleum Co.,* 621 F.3d 111, 124 (2d Cir. 2010).

**48.** *Twombly,* 550 U.S. at 564, 127 S.Ct. 1955.

**49.** *Iqbal,* 129 S.Ct. at 1949 (quotation marks omitted).

**50.** *Id.* (quotation marks omitted).

**51.** *DiFolco v. MSNBC Cable L.L.C.,* 622 F.3d 104, 111 (2d Cir.2010) (citing *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir.2002)).

**52.** *Id.* (quoting *Mangiafico v. Blumenthal,* 471 F.3d 391, 398 (2d Cir.2006)). *Accord Global Network Commc'ns, Inc. v. City of N.Y.,* 458 F.3d 150, 156 (2d Cir.2006).

**53.** *L–7 Designs, Inc. v. Old Navy, LLC,* 647 F.3d 419, 421–22 (2d Cir.2011) (citing *Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.,* 369 F.3d 212, 222 (2d Cir.2004) and *Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085, 1092 (2d Cir. 1995)).

## B. Breach of Contract

■ "To make out a viable claim for breach of contract, a 'complaint need only allege (1) the existence of an agreement; (2) adequate performance of the contract by the plaintiff; (3) breach of contract by the defendant; and (4) damages.' " [54] Here, the only issue is whether defendant breached a duty.

### 1. Duty to Defend

■ "The obligation of an insurer to defend an action against the insured is fixed solely by the allegations in the underlying complaint." [55] " 'In determining the duty to defend, the complaint claiming damages must be compared to the policy and a determination made as to whether, if the allegations are sustained, the insurer would be required to pay resulting judgment. . . . [T]he language of the policy and the allegations of the complaint must be construed together to determine the insurers' obligation.' " [56] In undertaking that analysis, " '[w]hen the language of the policy is clear and unambiguous, [the court must] give effect to that language.' Alternatively, when a provision in the policy is ambiguous, 'the policy is to be construed in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy, and controls coverage.' " [57] Pennsylvania's law is considered a strict four-corners rule.[58] Still, "[a]n insurer has a duty to defend whenever the allegations of an underlying complaint against a policyholder potentially fall within the coverage of the policy." [59]

### 2. "Personal and Advertising Injury"

■ Courts applying Pennsylvania law have also addressed the contours of the phrase "personal and advertising injury." To be covered under a policy:

(1) the injury must be committed in the course of advertising the insured's goods, products, or services;

(2) the injury must arise out of the offenses enumerated in the advertising injury definition;

(3) the injury must be caused by the offense committed in the course of advertising; and

(4) the offense must be committed during the policy period.[60]

Thus, "there must be some causal connection between the injury alleged and the advertising activities of the insured." [61]

54. *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir.2004) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir.1996)).

55. *Nationwide Mut. Fire Ins. Co.*, 2011 WL 1050050, at *5 (quotation marks and citation omitted).

56. *Donegal Mut. Ins. Co. v. Baumhammers*, 595 Pa. 147, 155, 938 A.2d 286 (2007) (quoting *Gene's Rest. Inc. v. Nationwide Ins. Co.*, 519 Pa. 306, 308, 548 A.2d 246 (1988)).

57. *Kvaerner Metals*, 589 Pa. at 331, 908 A.2d 888 (quoting *401 Fourth St. v. Investors Ins. Group*, 583 Pa. 445, 455, 879 A.2d 166 (2005)).

58. *See, e.g., Nationwide Mut. Fire Ins. Co.*, 2011 WL 1050050, at *5.

59. *Atlantic Mut. Ins. Co. v. Brotech Corp.*, 857 F.Supp. 423, 427 (E.D.Pa.1994), *aff'd sub nom., Atlantic Mut. Ins. Corp. v. Brotech Corp.*, 60 F.3d 813 (3d Cir.1995) (citations omitted).

60. *Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co.*, 20 F.Supp.2d 798, 801–02 (M.D.Pa. 1998), *aff'd*, 193 F.3d 742 (3d Cir.1999).

61. *Id.* at 803 (quoting *Winner Int'l Corp. v. Continental Cas. Co.*, 889 F.Supp. 809, 816 (W.D.Pa.1994), *aff'd sub nom., Cincinnati Ins. Co. v. Winner Int'l Corp.*, 54 F.3d 767 (3d Cir.1995) (table)). *Accord Atlantic Mut. Ins. Co.*, 857 F.Supp. at 427.

When an action stems from alleged misappropriation of a product, rather than an advertising concept, the claim can no longer be fairly characterized as alleging advertising injury.[62] A complaint's failure to allege the necessary causal relationship between injury and advertisement serves as a basis for an insurance provider to decline to provide a defense.[63]

## C. Tort Claims

### 1. Unfair Insurance Practices

 Pennsylvania courts have held unequivocally that the state's Unfair Insurance Practices Act does not confer a private right of action.[64] Further, the Court has not found, nor has the plaintiff identified, a single case addressing a common law cause of action for unfair insurance practices, even under New York law, which it contends applies. The closest thing to a cause of action for unfair insurance practices is an action arising out of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL").[65] That Act is "in relevant part designed to thwart fraud in the statutory sense, [so] it is to be construed liberally to effect its object of preventing unfair or deceptive practices." [66] The Act describes situations which could conceivably give rise to liability, including some relevant to the instant case:

> (v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;

> (vii) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;

> (ix) Advertising goods or services with intent not to sell them as advertised;

> (xiv) Failing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made.[67]

However, claims under this Act "[incorporate] the traditional elements of common law fraud of reliance and causation." [68] Furthermore, the private right of action under the UTPCPL is limited to claims arising out of purchases or leases "for personal, family or household purposes." [69] A product purchased for business purposes would presumably not give rise to an action under this Act.[70] In any event, there is

---

62. *See Green Mach. Corp. v. Zurich–Am. Ins. Grp.,* 313 F.3d 837, 841 (3d Cir.2002); *see also Frog,* 20 F.Supp.2d at 802.

63. *See Winner Int'l Corp.,* 889 F.Supp. at 816.

64. *See Hardy,* 365 Pa.Super. at 215, 529 A.2d 471. *See also Toy v. Metropolitan Life Ins. Co.,* 863 A.2d 1, 14 (Pa.Super.Ct.2004), *aff'd,* 593 Pa. 20, 928 A.2d 186 (2007) ("Our Supreme Court has held that a private cause of action in tort does not lie under the Unfair Insurance Practices Act."); *D'Ambrosio v. Pennsylvania Nat. Mut. Cas. Ins. Co.,* 494 Pa. 501, 507–08, 431 A.2d 966 (1981) ("There is no evidence to suggest, and we have no reason to believe, that the system of sanctions established under the Unfair Insurance Practices Act must be supplemented by a judicially created cause of action.").

65. *See Hardy,* 365 Pa.Super. at 221, 529 A.2d 471.

66. *Pekular v. Eich,* 355 Pa.Super. 276, 287, 513 A.2d 427 (1986).

67. 73 Pa. Stat. Ann. § 201–2.

68. *Toy,* 593 Pa. at 46, 928 A.2d 186 (citation omitted).

69. 73 Pa. Stat. Ann. § 201–9.2.

70. *See Wright v. North Am. Life Assur. Co.,* 372 Pa.Super. 272, 279–80, 539 A.2d 434

no precedent to suggest that any of these claims would constitute a claim for "unfair insurance practices" as such.[71]

### 2. Common Law Deceit and Fraud

Under Pennsylvania law, the elements of common law fraud include: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.[72]

"Unsupported assertions and conclusory accusations cannot create genuine issues of material fact as to the existence of fraud."[73] With respect to knowledge of the statement's or behavior's falsity, the requisite frame-of-mind has been "characterized as knowing or reckless, and applies when the maker of the utterance knows or believes that the matter is not as he or she represents it to be, does not have the confidence in the accuracy of the representation that is stated or implied, or knows that there is not the basis for the representation that is stated or implied."[74] As for the intent to induce reliance, "[f]raud involves deliberate and intentional conduct calculated to deceive.... Reckless conduct or negligence is not conduct deliberately calculated to deceive."[75] And, of course, "the *sine qua non* of actionable fraud is the showing of a deception."[76]

### 3. Federal Rule of Civil Procedure 9(b)

Rule 9(b) provides that "the circumstances constituting fraud ... shall be stated with particularity." To satisfy the particularity requirement, a complaint must: " '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.' "[77] However, "intent, knowledge, and other conditions of mind may be averred generally."[78]

### D. Leave to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that other than amendments as a matter of course,

---

(1988) (declining to rule on the propriety of recovery under the UTPCPL because the lower court had not sufficiently developed the record, but juxtaposing a good or service used for business purposes with one used for "personal, family or household purposes"). *See also Weinberg v. Sun Co.*, 565 Pa. 612, 618, 777 A.2d 442 (2001) (holding that the UTPCPL requires plaintiff to allege that he acquired an offending product "for personal or household purposes as opposed to business purposes").

**71.** Stated differently, plaintiff may be seeking to recover for losses incurred as a result of insurance practices it deems unfair, but a court would not be addressing an action entitled "unfair insurance practices."

**72.** *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 275 (3d Cir.2010).

**73.** *Blumenstock v. Gibson*, 811 A.2d 1029, 1034 (Pa.Super.Ct.2002).

**74.** *Brindle v. West Allegheny Hosp.*, 406 Pa.Super. 572, 574–75, 594 A.2d 766 (1991) (citation omitted).

**75.** *Commonwealth v. Lurie*, 524 Pa. 56, 64, 569 A.2d 329 (1990).

**76.** *Frowen v. Blank*, 493 Pa. 137, 143, 425 A.2d 412 (1981).

**77.** *Shields v. Citytrust Bancorp., Inc.*, 25 F.3d 1124, 1128 (2d Cir.1994) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir.1993)).

**78.** Fed.R.Civ.P. 9(b).

"a party may amend its pleading only with the opposing party's written consent or with the court's leave." [79] Although "[t]he Court should freely give leave when justice so requires," [80] it is "within the sound discretion of the district court to grant or deny leave to amend." [81] "When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." [82] However, "it is well established that leave to amend a complaint need not be granted when amendment would be futile." [83]

## V. DISCUSSION

### A. Breach of Duty to Defend

There was unquestionably an agreement, in the form of the written insurance policy, and there is no allegation of inadequate performance by the plaintiff or Hyman. Thus, the only question is whether Liberty breached the contract when it refused to defend. That, in turn, depends on whether it had a duty to do so.

■■■ FLG has failed to state a claim that Liberty had a duty to defend Hyman in the underlying action. Hyman's policy clearly stated that only allegations of injury directly caused by advertisement would be covered. FLG has not shown that Hyman inflicted the alleged injury in the course of advertising, or that the injury arose out of an offense listed within the policy's advertising definition, or that the injury was caused by an offense committed in the course of advertising. Indeed, the policy states that intellectual property-related offenses arising out of anything other than advertising are not covered. While it is true that plaintiff avers that Van Cleef claimed it had been injured by Hyman's advertising activities, that contention is belied by the allegations in the Underlying Complaint. Plaintiff has pled no facts to suggest that the defendant had any reason to believe that the Underlying Complaint fell within the policy's coverage. FLG's claim is dismissed.

### B. Unfair Insurance Practices

■■■ To begin, plaintiff has not identified any concrete cause of action under which it brings its claim for unfair insurance practices. The Complaint discusses practices of delay, unwillingness to participate in settlement negotiations, and denial of defense and coverage,[84] closely resembling the breach of contract claim already dismissed. Further, plaintiff avers unfair and deceptive practices arising out of an intentional misrepresentation of benefits, advantages, conditions and terms of the policy, as well as intentional misrepresentation of the policy's true nature.[85] These claims sound in fraud, which would require plaintiff to at least specify the nature of the fraudulent statements, to identify the speaker, and to make clear the location and approximate date of these occurrences. Beyond identifying "defendant" as the perpetrator of said unfair practices, FLG has not pled any facts at all. FLG points to no specific insurance agent or agents; plaintiff has offered no basis for its suggestion that misleading statements were made; and it has alleged not a single

**79.** *Slayton v. American Express Co.*, 460 F.3d 215, 226 n. 10 (2d Cir.2006) (quotation marks omitted).

**80.** Fed.R.Civ.P. 15(a)(2).

**81.** *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir.2007).

**82.** *Hayden v. County of Nassau*, 180 F.3d 42, 53 (2d Cir.1999).

**83.** *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003).

**84.** *See* Complaint ¶ 34.

**85.** *See id.* ¶¶ 35–36.

detail as to when the policy was advertised, negotiated or sold.[86] Even if FLG had intended to raise a claim under the UTPCPL, it would need to show that Liberty misrepresented its policy.[87] Without any factual content to so suggest, the Court cannot draw any inferences in the plaintiff's favor. As FLG has not pled with any degree of particularity whatsoever, the claim is dismissed.

## C. Common Law Deceit and Fraud

 FLG's claim for common law deceit and fraud is barely distinguishable from its claim of unfair insurance practices. FLG is slightly more specific here, in that it alleges that when Liberty offered a policy which would cover "advertising injury," it "knew full well the type of advertising done by the insured and others in their field, and that Liberty had no intention of recognizing their advertising as being covered by the policy it issued."[88] Putting aside the fact that FLG has not included a single fact to suggest how the

insured advertised or that Liberty knew that procedure "full well," FLG has failed to meet the basic particularity requirements outlined above. The Complaint never identifies the speaker, nor the time or place of his allegedly misleading statements. There is no basis for finding FLG's allegations "plausible." As such, this claim too is dismissed.[89]

## D. Leave to Amend

 Because the insurance policy and Underlying Complaint provide enough facts for the Court to determine that FLG cannot state a breach-of-contract claim, amendment to that part of the Complaint would be futile. However, it is possible that with greater factual development, the claims for unfair insurance practices (properly labeled) and deceit and fraud will be plausible.[90] As such, because amendment may not be futile, FLG may file an amended complaint within thirty (30) days of the date of this Order.

---

**86.** The Complaint avers only that Hyman is based in Pennsylvania, that Liberty is based in Massachusetts, and that Liberty issued a policy to Hyman. *Id.* ¶¶ 4–7. The Denial Letter attached to the Complaint further outlines that the policy was issued to Hyman in Pennsylvania by a Pennsylvania sales office. The Complaint sets forth no other facts about the contract's formation.

**87.** Further, FLG would need to demonstrate that Hyman purchased the policy for "personal, family or household purposes."

**88.** Complaint ¶¶ 39–40.

**89.** Defendant contends that the Court should dismiss the third claim because it "improperly seeks to morph this garden variety breach of contract case into a fraud claim." Defendant's Memorandum of Law in Support of Motion to Dismiss at 21 (quoting *Hart v. Arnold*, 2005 Pa.Super. 328, 339, 884 A.2d 316 (2005)). Defendant argues that plaintiff was "preclude[d] from re-casting ordinary breach

of contract claims into tort claims." *Id.* (quoting *Hart*, 2005 Pa.Super. at 339, 884 A.2d 316). Perhaps understandably, since plaintiff never explicitly specifies whether it is alleging fraudulent performance of the contract, fraudulent inducement to enter into the contract, or both, defendant does not distinguish between the two. To the extent that plaintiff's claim is for fraudulent performance, such "duties arose solely from the contract between the parties and were created and grounded in the contract itself." *Hart*, 2005 Pa. Super at 341, 884 A.2d 316. As such, defendant is correct that the claim is barred. On the other hand, the authority cited by defendant relies upon the existence of an integration clause in concluding that the claim for fraudulent inducement is also impermissible. *See id.* Because defendant has failed to bring to the Court's attention any such language in its own policy, I cannot dismiss the claim on the grounds defendant requests.

**90.** *See supra* note 90.

## VI. REQUEST FOR COSTS

 Defendant requests costs and disbursement. It is well-settled in New York and the rest of the country, under the longstanding "American Rule," that attorneys' fees are "incidents of litigation and a prevailing party may not collect them from the loser unless an award is authorized by agreement between the parties, statute or court rule." [91] Liberty has not pointed to any such agreement, statute or rule. Moreover, Liberty has not made a motion for sanctions "separately from other motions and requests" in accordance with Rule 11(c)(1)(B). [92] Although this Court has the power to issue a show cause order on its own initiative, because "show cause orders will ordinarily be issued only in situations that are akin to contempt of court." [93] such an order is not appropriate here. Liberty is, of course, free to bring a separate motion for sanctions, but because it has not done so, I do not reach the merits of whether the conduct of plaintiff warrants sanctions. Liberty's request for imposition of costs and disbursement is therefore denied.

## VII. CONCLUSION

For the foregoing reasons, Liberty's motion to dismiss is granted. The Clerk of the Court is directed to close this motion [docket No. 16]. If FLG does not file an amended complaint within 30 days, the case will be closed.

SO ORDERED.

## *OPINION AND ORDER*

## I. INTRODUCTION

Feldman Law Group ("FLG") filed suit against Liberty Mutual Insurance Company ("Liberty") as a result of Liberty's refusal to provide a defense to The Hyman Companies ("Hyman") in an earlier action before this Court.[1] In a June 30, 2011 Opinion and Order, the Court granted Liberty's motion to dismiss all claims.[2] On July 28, 2011, FLG moved for reconsideration. For the reasons discussed below, FLG's motion is denied.

## II. BACKGROUND [3]

In the Underlying Action between Van Cleef and Arpels Logistics S.A. ("Van Cleef") and Hyman, Van Cleef alleged that Hyman produced jewelry featuring a series of elements representing the Alhambra Trade Dress, which is copyrighted Van Cleef property.[4] Consequently, Van Cleef complained that Hyman was responsible for trade dress infringement as a violation of Section 43(a) of the Lanham Act,[5] common law trade dress infringement and unfair competition, and copyright infringe-

---

**91.** *Oscar Gruss & Son, Inc. v. Hollander,* 337 F.3d 186, 199 (2d Cir.2003). *Accord United States Underwriters Ins. Co. v. City Club Hotel, LLC,* 3 N.Y.3d 592, 597, 789 N.Y.S.2d 470, 822 N.E.2d 777 (2004).

**92.** Fed.R.Civ.P. 11(c)(1)(B).

**93.** Fed.R.Civ.P. 11, 1993 Advisory Committee Note.

**1.** *See Van Cleef & Arpels Logistics, S.A. v. Goldstein Jewelers,* 08 Civ. 3007(SAS).

**2.** *Feldman Law Group P.C. v. Liberty Mut. Ins. Co.,* No. 11 Civ. 425, 819 F.Supp.2d 247, 2011 WL 2610642 (S.D.N.Y. June 30, 2011) ("June 30 Order").

**3.** This Memorandum Opinion and Order assumes familiarity with the background and procedural posture of this case, as described in the June 30 Order.

**4.** *See* Complaint in *Van Cleef & Arpels Logistics, S.A. v. Landau Jewelry* ("Underlying Complaint"), Ex. 2 to Complaint, ¶ 17.

**5.** *See* 15 U.S.C.A. § 1125(a).

ment.[6] Hyman requested that Liberty, its insurance provider, furnish a defense,[7] but Liberty refused. Thus, in the instant case, FLG averred that Liberty was duty-bound to defend Hyman "against claims of Trade Dress and Copyright Infringement resulting from insured's alleged advertisement of infringing goods and products."[8]

The Liberty Policy states that the insurance company has "the right and duty to defend" in any suit seeking damages for "personal and advertising injury."[9] However, the policy, which is attached to and incorporated by reference into the Complaint, only covers injury arising out of "the use of another's advertising idea" or "infringing upon another's copyright, trade dress or slogan in your advertisement."[10] The policy defines advertisement as "a paid announcement that is broadcast or published in the print, broadcast or electronic media to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters."[11]

Additionally, the policy contains fifteen exclusions of acts which are not covered. Exclusion "i" pertains to " '[p]ersonal and advertising injury' arising out of infringement of copyright, patent, trademark, trade secret or other intellectual property rights or out of securities fraud."[12] The policy makes clear that the exclusion does not apply to trade dress or copyright infringement in an advertisement, but otherwise exempts intellectual property-related offenses from coverage.[13]

## III. APPLICABLE LAW

### A. Motion for Reconsideration

#### 1. Rule 59

 "A Rule 59(e) motion . . . 'may not be used to relitigate old matters, or raise arguments . . . that could have been raised prior to the entry of judgment.'"[14] "Rule 59(e) covers a broad range of motions, including motions for reconsideration."[15]

There are four basic grounds upon which a Rule 59(e) motion may be granted. *First,* the movant may demonstrate that the motion is necessary to correct manifest errors of law or fact upon which the judgment is based. *Second,* the motion may be granted so that the moving party may present newly discovered or previously unavailable evidence. *Third,* the motion will be granted if necessary to prevent manifest injustice. Serious misconduct of counsel may justify relief under this theory. *Fourth,* a Rule 59(e) motion may be justified by an intervening change in controlling law.[16]

---

6. *See* Underlying Complaint ¶ 20; *see also* 17 U.S.C. § 501 (outlining copyright infringement claim).

7. *See* Complaint ¶ 14.

8. Complaint ¶ 29.

9. Liberty Mutual Insurance Policy Endorsements ("Liberty Policy"), Ex. 1 to Complaint, at 1.

10. *Id.* at 4.

11. *Id.* at 3.

12. *Id.* at 2.

13. *See id.*

14. *Bonded Concrete, Inc. v. D.A. Collins Constr. Co.,* 29 Fed.Appx. 725, 726 (2d Cir. 2002) (quoting 11 Charles A. Wright, Arthur R. Miller, Mary Kay Kane & Richard L. Marcus, *Federal Practice and Procedure* § 2810.1 (2d ed.)).

15. *Association for Retarded Citizens of Conn., Inc. v. Thorne,* 68 F.3d 547, 553 (2d Cir.1995) (citing *Federal Practice and Procedure* § 2810.1).

16. *Federal Practice and Procedure* § 2810.1 (emphasis added).

Parties have twenty-eight (28) days following the entry of a judgment to file a Rule 59(e) motion.[17]

## 2. Rule 60

Rule 60(a) of the Federal Rules of Civil Procedure provides a remedy when the Court's order "fail[s] to reflect the actual intention of the court." [18]

The relevant distinction is "between what is erroneous because the thing spoken, written or recorded is not what the person intended to speak, write or record, and what is erroneous because the person later discovers that the thing said, written or recorded was wrong. The former comes within Rule 60(a); the latter does not." [19]

"Rule 60(b) was intended to preserve the delicate balance between the sanctity of final judgments and the incessant command of the court's conscience that justice be done in light of all the facts." [20] Like Rule 59(e), Rule 60(b) does not provide a party with the opportunity to relitigate the merits of a case in an attempt to win a point already "carefully analyzed and justifiably disposed." [21] Accordingly, motions for relief from judgment under Rule 60(b) are generally disfavored in the Second Circuit.[22]

Rule 60(b) provides that a district court may relieve a party from a final judgment or order in five enumerated circumstances and, according to a sixth subclause, for "any other reason that justifies relief." [23] The Second Circuit has held that "[m]otions under rule 60(b) are addressed to the sound discretion of the district court and are generally granted only upon a showing of exceptional circumstances." [24] The Second Circuit has set forth a three-prong test that must be satisfied in order for a Rule 60(b) motion to succeed: (1) there must be "highly convincing" evidence in support of the motion; (2) the moving party must show good cause for failing to act sooner; and (3) the moving party must show that granting the motion will not

17. *See* Fed.R.Civ.P. 59(e).

18. *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1140 (2d Cir.1994). *Accord Robert Lewis Rosen Assocs., Ltd. v. Webb*, 473 F.3d 498, 504 (2d Cir.2007).

19. *In re Marc Rich & Co. A.G.*, 739 F.2d 834, 837 (2d Cir.1984) (quoting *Allied Materials Corp. v. Superior Prods. Co.*, 620 F.2d 224, 226 (10th Cir.1980)).

20. *Smalls v. United States*, 471 F.3d 186, 191 (D.C.Cir.2006) (quotation marks, ellipses, and citation omitted). *Accord Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir.1986) ("Properly applied, Rule 60(b) strikes a balance between serving the ends of justice and preserving the finality of judgments. In other words, it should be broadly construed to do substantial justice, yet final judgments should not be lightly reopened.") (quotation marks and citations omitted).

21. *In re Bulk Oil (USA) Inc.*, No. 89–B–13380, 2007 WL 1121739, at *10 (S.D.N.Y. Apr. 11, 2007) (quotation marks and citation omitted) (stating that a court should not "reconsider issues already examined simply because [a party] is dissatisfied with the outcome of his case. To do otherwise would be a waste of judicial resources.").

22. *See Empresa Cubana Del Tabaco v. General Cigar Co. Inc.*, 385 Fed.Appx. 29, 31 (2d Cir. 2010) (citing *Pichardo v. Ashcroft*, 374 F.3d 46, 55 (2d Cir.2004)) ("We have cautioned, however, that Rule 60(b) motions are disfavored...."); *Simone v. Prudential Ins. Co. of Am.*, 164 Fed.Appx. 39, 40 (2d Cir.2006); *United States v. International Bhd. of Teamsters*, 247 F.3d 370, 391 (2d Cir.2001).

23. Fed.R.Civ.P. 60(b)(1)-(6).

24. *Mendell in Behalf of Viacom, Inc. v. Gollust*, 909 F.2d 724, 731 (2d Cir.1990), *aff'd sub nom., Gollust v. Mendell*, 501 U.S. 115, 111 S.Ct. 2173, 115 L.Ed.2d 109 (1991) (citing *Nemaizer*, 793 F.2d at 61). *Accord Paddington Partners*, 34 F.3d at 1142.

impose an undue hardship on any party.[25]

## B. Breach of Duty to Defend [26]

In the June 30 Order, I fully explained the legal standard for an insurer's duty to defend. Nonetheless, there are several aspects of that standard that bear repeating. Pennsylvania's law is considered a strict four-corners rule.[27] " 'When the language of the policy is clear and unambiguous, [the court must] give effect to that language.' "[28] Still, "[a]n insurer has a duty to defend whenever the allegations of an underlying complaint against a policyholder *potentially fall* within the coverage of the policy."[29]

Courts applying Pennsylvania law have addressed the contours of the phrase "personal and advertising injury." To be covered under a policy:

(1) the injury must be committed in the course of advertising the insured's goods, products, or services;

(2) the injury must arise out of the offenses enumerated in the advertising injury definition;

(3) the injury must be caused by the offense committed in the course of advertising; and

(4) the offense must be committed during the policy period.[30]

Thus, "there must be some causal connection between the injury alleged and the advertising activities of the insured."[31] When an action stems from alleged misappropriation of a product, rather than an advertising concept, the claim can no longer be fairly characterized as alleging advertising injury.[32]

## IV. DISCUSSION

### A. Motion for Reconsideration

Under Rule 59(e), FLG must demonstrate that its motion is necessary to correct manifest errors of law or fact. The other grounds upon which a Rule 59(e) motion may be granted—newly discovered evidence, manifest injustice, and change of controlling law—are inapposite. Insofar as FLG moves pursuant to Rule 60, section (a) is inapplicable, as FLG does not assert that the Court failed to adequately express its actual intentions. Rule 60(b)(6), then, requires that FLG produce highly convincing evidence, show good cause for not acting sooner, and demonstrate that neither party will be unduly

---

**25.** See *Kotlicky v. United States Fid. Guar. Co.*, 817 F.2d 6, 9 (2d Cir.1987).

**26.** This Memorandum Opinion and Order assumes familiarity with the legal standard for a breach of the duty to defend set forth in the June 30 order.

**27.** See, e.g., *Nationwide Mut. Fire Ins. Co. v. Malofiy*, Civ. A. No. 10–2410, 2011 WL 1050050, at *5 (E.D.Pa. Mar. 22, 2011).

**28.** *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 589 Pa. 317, 331, 908 A.2d 888 (2006) (quoting *401 Fourth St. v. Investors Ins. Group*, 583 Pa. 445, 455, 879 A.2d 166 (2005)).

**29.** *Atlantic Mut. Ins. Co. v. Brotech Corp.*, 857 F.Supp. 423, 427 (E.D.Pa.1994), *aff'd sub nom., Atlantic Mut. Ins. Corp. v. Brotech*

Corp., 60 F.3d 813 (3d Cir.1995) (citations omitted) (emphasis added).

**30.** *Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co.*, 20 F.Supp.2d 798, 801–02 (M.D.Pa. 1998), *aff'd*, 193 F.3d 742 (3d Cir.1999).

**31.** *Id.* at 803 (quoting *Winner Int'l Corp. v. Continental Cas. Co.*, 889 F.Supp. 809, 816 (W.D.Pa.1994), *aff'd sub nom., Cincinnati Ins. Co. v. Winner Int'l Corp.*, 54 F.3d 767 (3d Cir.1995) (table)). *Accord Atlantic Mut. Ins. Co.*, 857 F.Supp. at 427.

**32.** See *Green Mach. Corp. v. Zurich–Am. Ins. Grp.*, 313 F.3d 837, 841 (3d Cir.2002); *see also Frog, Switch*, 20 F.Supp.2d at 802.

burdened if the Court grants the motion. In short, under either rule, FLG must meet a high standard.

## B. Breach of Duty to Defend

FLG argues that the Court overlooked cases supporting the proposition that under Pennsylvania law, trade dress infringement constitutes an advertising injury. As such, FLG contends that at least certain claims in the Underlying Complaint were potentially covered by the Liberty Policy, thus triggering a duty to defend.

To determine whether that is so, Pennsylvania's strict four-corners rule dictates that the Court look only at the underlaying complaint and the policy itself. While the Liberty Policy may not have been especially comprehensive in itemizing what it covered, it surely was comprehensive in outlining what it would not. Because Pennsylvania law requires that, to trigger a duty to defend, the injury must have arisen out of an offense enumerated in the policy's advertising injury definition, Liberty carefully defined its policy terms. Liberty only covered personal or advertising injury inflicted by means of a paid announcement published in or aired by a media outlet. The policy explicitly states that Liberty would not cover intellectual property-related injuries unless they were incurred as a result of an advertisement. FLG has cited several cases which it believes support the proposition that under Pennsylvania law, trade dress infringement, of any sort, constitutes an advertising injury. Yet FLG ignores the plain language of the Liberty Policy and cites cases which do not appear to have arisen out of policies with similarly unambiguous language.

To begin, FLG cites three cases, applying Pennsylvania law, that allegedly support the proposition that trade dress infringement represents an advertising injury.[33] But all three cases involved policies which defined advertising injury as "[m]isappropriation of advertising ideas or style of doing business" as well as "[i]nfringement of copyright, title or slogan."[34] Those courts consequently held that trade dress infringement fit within "misappropriation of advertising ideas or style of doing business."[35] No such language exists in the Liberty Policy; to extend that principle to this case would ignore Liberty's narrower definition of advertising injury.

The remaining cases cited by FLG in support of its motion apply the law of other states and thus do not help this Court determine how the Liberty Policy should be interpreted under Pennsylvania law. FLG emphasizes the Second Circuit's holding in *R.C. Bigelow, Inc. v. Liberty Mutual Insurance Co.*, to suggest that the Court should impose a duty to defend despite the Liberty Policy's very clear language.[36] For several reasons, FLG's reliance on that case is unavailing. *First*, the court applied Connecticut law, under which the duty to defend is arguably broader than it is under Pennsylvania

---

**33.** *See Cat Internet Services, Inc. v. Providence Wash. Ins. Co.*, 333 F.3d 138 (3d Cir.2003); *Frog, Switch*, 193 F.3d 742; *Cincinnati Ins. Cos. v. Pestco, Inc.*, 374 F.Supp.2d 451 (W.D.Pa.2004).

**34.** *Cincinnati Ins. Cos.*, 374 F.Supp.2d at 455; *see also Frog, Switch*, 193 F.3d at 746 (defining advertising injury as "misappropriation of advertising ideas or style of doing business; and ... infringement of copyright, title, or slogan"); *Cat Internet Services, Inc.*, 333 F.3d at 140 (defining advertising injury as "[m]isappropriation of advertising ideas or style of doing business [and] [i]nfringement of copyright title or slogan").

**35.** *Cat Internet Services, Inc.*, 333 F.3d at 142; *Frog, Switch*, 193 F.3d at 749; *Cincinnati Ins. Cos.*, 374 F.Supp.2d at 459.

**36.** 287 F.3d 242, 245 (2d Cir.2002).

law.[37] *Second,* the underlying complaint in *R.C. Bigelow* alleged that the injury arose (at least in part) out of specific advertisements.[38] *Third,* there is no evidence that the policy in *R.C. Bigelow* contained a broad coverage exception for "'personal and advertising injury' arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights."[39] In the end, the Second Circuit's holding in *R.C. Bigelow*— non-binding precedent construing the law of a different state—is simply insufficient to surmount the high bars imposed by a Rules 59(e) and 60(b).[40]

■ It is beyond cavil that, "[s]ince the language [of a contract] is presumptively within the control of the party drafting the agreement ... any ambiguity in that language will be interpreted against the drafter."[41] More specifically, in an insurance policy, "[a]mbiguities must be construed in favor of the insured because the insurer writes the contract."[42] In light of this interpretive rule, Liberty appears to have removed all ambiguities from its contract. It has clearly defined the terms it uses and carefully outlined the acts it excludes. In the end, there are no ambiguities here. FLG has not demonstrated that the court made manifest errors of law or fact, nor has it set forth highly convincing evidence that relief from a judgment is warranted.[43] There simply is no sound basis for the Court to revise its earlier Order.

37. *Id.* at 246 ("The duty to defend does not hinge on the skill or manner in which a complaint is drafted, but rests on the substantive thrust of the complaint, *and the surrounding facts.*") (emphasis added).

38. *See id.* at 244 ("The second claim, for false advertising, alleged that Bigelow failed to correctly indicate on the packaging that the teas were 'artificially flavored,' and that Bigelow engaged in false advertising by mounting an aggressive marketing and print advertising campaign to promote these teas, while conveying the false and misleading impression that those herbal teas were all natural."); *id.* at 248 ("Because the ads were attached as exhibits to Celestial's complaint, Bigelow was entitled to believe that Celestial would try to use the ads to prove the likelihood of consumer confusion that it claimed resulted from trade dress infringement.").

39. Liberty Policy, at 2.

40. Similarly, because the Underlying Complaint requests that Hyman destroy advertising materials that depict the offending jewelry, FLG argues that the Court should consider the complaint's prayer for relief in determining whether a complaint falls within an insurance policy's coverage. The only case FLG cites in support applied New York law. *See Technaoro Inc. v. United States Fid. & Cas. Co.,* No. 05 Civ. 9216, 2006 WL 3230299 (S.D.N.Y. Nov. 7, 2006). That case is distinguishable on several grounds. *First,* as explained at some length in the course of this Court's choice of law analysis, New York law imposes a broader duty to defend than does Pennsylvania law. *See Feldman Law Group P.C.,* 2011 WL 2610642, at *2 ("Whereas Pennsylvania employs a strict four-corners rule, New York will impose a duty to defend based on knowledge extrinsic to the contract. This difference has the potential to fundamentally alter a court's analysis ..."). *Second,* the policy at issue in *Technaoro* defines advertising as "attracting the attention of others *by any means* for the purpose of seeking customers or supporters or increasing sales or business." *Technaoro Inc.,* 2006 WL 3230299, at *1 (emphasis added). This is considerably broader than the Liberty Policy's definition of advertising. *Finally,* the *Technaoro* court found the prayer for relief relevant in conjunction with other references, made elsewhere in the underlying complaint, to "promotion," which fits within that policy's expansive definition of advertising. In short, *Technaoro* does little to advance FLG's argument.

41. 11 Williston on Contracts § 32:12 (4th ed.)

42. *Frog, Switch,* 193 F.3d at 746.

43. The Court need not reach the other elements—that FLG had good cause for not acting sooner and that it demonstrated that nei-

## V. CONCLUSION

For the foregoing reasons, FLG's motion to alter, amend or provide relief from the June 30, 2011 order is denied. The Clerk is directed to close this motion [docket No. 22].

SO ORDERED.

ther party would be unduly burdened if the Court granted the motion—of a Rule 60(b)(6) motion.